Argued at Pendleton, May 5, on motion to dismiss appeal and motion denied. Argued on the merits May 5, affirmed June 29, 1926.

## DELILAH LAUR ET AL. *v.* WALLA WALLA IRRIGATION CO. ET AL.

(247 Pac. 753.)

Appeal and Error—"Adverse Party," on Whom Notice of Appeal must be Served, is One Whose Interest as to Judgment or Decree Appealed from is in Conflict With Reversal or Modification Thereof (§ 550 Or. L.).

1. An "adverse party" to a judgment or decree, on whom a notice of appeal is required to be served, under Section 550, Or. L., is one whose interest in regard to judgment or decree appealed from is in conflict with a reversal or modification thereof.

Appeal and Error—Watermaster Who was not Interested in Result of Appeal from Decree for Plaintiffs in Suit to Prevent Interference With Irrigation Ditches, Held not an "Adverse Party," on Whom Notice of Appeal was Required to be Served (§ 550 [1] Or. L.).

2. In suit to restrain irrigation company from interfering with irrigation ditches of plaintiffs, watermaster, who was merely a nominal party to suit, and was not interested in result of appeal,

---

1. See 2 R. C. L. 109.

and whose interest would in no way be affected by a reversal or change in decree for plaintiffs, *held* not "adverse party," within Section 500 (1) Or. L., on whom notice of appeal was required to be served.

### ON THE MERITS.

Damages.

3. Measure of damages for property negligently or tortiously destroyed by one not its owner is its value at time and place of destruction.

Damages—Plaintiff, to Prove Damages for Destruction of Growing and Immature Crop of Alfalfa, may Show Probable Yield, Together With Value of Crop at Market Season, Deducting Therefrom Necessary Costs of Cultivation, Harvesting and Marketing.

4. When thing destroyed is growing and immature crop, such as alfalfa, plaintiff, to prove his damages, may show probable amount of alfalfa hay that crop would have yielded had it been allowed to mature without being injured, judging from its condition and appearance at time of its injury as compared with other crops in other years under like conditions, or in immediate vicinity, together with value of crop at market season, deducting therefrom necessary cost of cultivation, harvesting and marketing.

Appeal and Error, 3 **C. J.,** p. 1219, n. 10.
Waters, 40 **Cyc.,** p. 840, n. 90, p. 841, n. 91.

From Umatilla: FRED W. WILSON, Judge.

In Banc.

### ON MOTION TO DISMISS APPEAL.
#### MOTION DENIED.

For the motion, *Messrs. Lowell, Clark & McIntyre.*

*Contra, Messrs. Raley, Raley & Steiwer* and *Mr. H. J. Warner.*

BEAN, J.—The plaintiffs and respondents move to dismiss this appeal for the reason that the defendant

3. See 8 **R. C. L.** 489.
4. Measure of damages for injury to or destruction of growing crops, see notes in 12 L. R. A. (N. S.) 267; 23 L. R. A. (N. S.) 310; 27 L. R. A. (N. S.) 168; 37 L. R. A. (N. S.) 976; 49 L. R. A. (N. S.) 415. See, also, 8 R. C. L. 380.

Aubrey E. Perry, 'the duly appointed watermaster for the County of Umatilla, Oregon, who appeared and filed an answer herein, was not served with the notice of appeal.

Plaintiffs assert that defendant Aubrey E. Perry "is a material party defendant upon this appeal."

This is a suit to restrain the defendants Walla Walla Irrigation Company, a corporation, and E. C. Burlingame, the president and manager of the corporation, from interfering with certain lateral ditches of plaintiffs, and from trespassing upon plaintiffs' land by constructing or maintaining a new lateral ditch on practically the same line as the old ditches, but on a lower level or grade so as to interfere with and prevent the use by plaintiffs of certain adjudicated prior water rights of plaintiffs, and for resulting damages.

The watermaster was named as defendant in the suit and plaintiffs averred that that official "has adopted the unlawful and wrongful contention of the defendant corporation as to its right to construct said new lateral and drain off the water." It is not alleged that the watermaster was interested in any way in the ditches. Apparently that official is made a party in order that he might have notice of the suit.

Plaintiffs pray for an order "directing the watermaster, defendant herein, to open the gates whenever there is a sufficient head of water to entitle the plaintiffs, or either of them, to water through said canal and ditch in accordance with said adjudicated priority." Such an order would not change the force of the adjudication of plaintiffs' priorities of water rights, which they allege.

A decree was rendered adjudging plaintiffs' right to the ditches and restraining the defendant "(except Perry)" from interfering therewith and for damages. No final decree was prayed for by plaintiffs or rendered against the watermaster, nor any judgment for costs or disbursements entered against him.

Our statute, Sec. 550 Or. L., directs *inter alia:*

"If the appeal is not taken at the time the decision, order, judgment or decree is rendered or given, then the party desiring to appeal may cause a notice, signed by himself or attorney, to be served on such adverse party or parties as have appeared in the action or suit, or upon his or their attorney, at any place in the state, and file the original with proof of service indorsed thereon, with the clerk of the court in which the judgment, decree or order is entered."

1. An adverse party to a judgment or decree upon whom a notice of appeal is required to be served, under Section 550, Or. L., is a party whose interest in regard to the judgment or decree is in conflict with a reversal or modification of the judgment or decree appealed from: *First Nat. Bank* v. *Halliday,* 98 Or. 649 (193 Pac. 1029).

2. The watermaster was merely a nominal party to the suit. He is not interested in the result of this appeal. His interest would in no way be affected by a reversal or change in such decree. It was unnecessary to serve the notice of appeal upon the defendant watermaster. The motion to dismiss the appeal is denied.                                AFFIRMED.

### ON THE MERITS.

For appellants there was a brief over the names of *Messrs. Raley, Raley & Steiwer* and *Mr. J. H. Warner,* with an oral argument by *Mr. James H. Raley.*

For respondents there was a brief over the name of *Messrs. Lowell, Clark & McIntyre,* with an oral argument by *Mr. Stephen A. Lowell.*

BEAN, J.—Testimony was taken upon the issues raised in the case and a decree entered enjoining the defendants (except Aubrey E. Perry), their servants and agents, from plowing up or injuring, or in any manner interfering with the lands, ditches or laterals of the plaintiffs, and particularly from interfering with a canal or ditch running from Pine Creek, formerly known as the Dickerson Ditch, and afterwards known as the Costin Ditch, or any of its laterals or sublaterals, as the same have been operated by either of the plaintiffs, or as the same may be hereafter restored by them, or either of them; and decreeing that neither defendant has any right or ownership in said system of ditches or the laterals or sublaterals thereof, so far as involved in this suit.

The main ditch hereby referred to being ditch No. 2, running northwesterly from the main ditch, at a point on the Nietert land where the main ditch turns to the southwest, running thence to lands in section 21 (also known as Costin Ditch) and one lateral running northerly from ditch No. 2, at a point near the middle of the west half of the northwest quarter of section 27, township 6 north, range 34 E., W. M., in Umatilla County, Oregon, to reach the said Kinney lands about 349 feet east of the southwest corner thereof; a ditch running northerly from said ditch No. 2 near the east side of the said 80 acres last described, to reach the Kinney tract about 150 feet west of said east line extended, and a lateral running east in section 21, same township and range from ditch No. 2 about 282 feet, to reach

a point just north of the southwest corner of said Kinney lands.

The Circuit Court further ordered and decreed that the plaintiffs, Hannah E. Nietert and Delilah Laur, as the owners of the fee-simple tract of land described in the decree, have and recover from the defendant Walla Walla Irrigation Company and E. C. Burlingame, and each of them, as damages, the sum of $727; that the plaintiff Lafayette Skeen, as tenant of said Neitert tract, have and recover from said defendants, and each of them, the sum of $245; and that the plaintiff Verona B. Kinney have and recover from said defendants, and each of them, as damages the sum of $600; and that the plaintiffs recover their costs and disbursements of this suit taxed at $308.10.

At the time of the argument counsel for appellants Walla Walla Irrigation Company and E. C. Burlingame stated that the only question involved upon this appeal was that relating to the damages. The plaintiffs Delilah Laur and Hannah Nietert are the owners of land described in the complaint and in the decree of the Circuit Court; and Lafayette Skeen was, during the year 1925, in possession of said lands as lessee. Verona B. Kinney is the owner of land described in the complaint and in the decree. Plaintiffs Hannah E. Nietert and Delilah Laur were the owners at the time of the injury complained of, and owned as appurtenant to their lands a water right having an adjudicated priority as of May 3, 1903, to be taken from Pine Creek for use upon 35 acres in the southeast quarter of the northwest quarter and 35 acres in the northeast quarter of the northwest quarter of section 27, township 6 north, range

34 E., W. M., and not exceeding .97 cubic feet per second, or the equivalent in case of rotation; 1/80 of one cubic foot per second for each acre irrigated for irrigation purposes, the balance for domestic use.

The plaintiff Verona B. Kinney was the owner of the south half of the south half of section 22, township 6 north, range 34 E., W. M., and the water right appurtenant thereto, and together with the plaintiffs Neitert and Laur, is the owner of a lateral ditch known as the old Costin Ditch running from the Costin Feed Canal located upon the lands of Neitert and Laur and lands of the defendant corporation to and upon the lands of plaintiff Kinney, which lands of this plaintiff is dependent for its supply of irrigation water from the waters of Pine Creek. The defendant Walla Walla Irrigation Company is the owner of an irrigation canal taking water a long distance from the Walla Walla River and across Pine Creek. For a portion of the way after crossing Pine Creek it was constructed at the same place the old Dickerson or Costin Ditch, used by plaintiffs, was constructed, and extends to a point near the land of plaintiffs.

After the canal of the defendant corporation was constructed, the plaintiff ran water from Pine Creek in the old ditch to where it intersected the canal of the defendant known as the Burlingame Canal, thence by some mutual arrangement to a point near their land and took the water from the main canal through a lateral, marked on the map as the Costin lateral, or lateral No. 2, and also another lateral taking water from the ditch of defendant, about 62 feet from where the first-mentioned lateral received the water, known as lateral No. 1.

About May, 1923, the defendant corporation and
E. O. Burlingame, its officer and manager, constructed
a lateral commencing a few feet from the main canal
of the defendant, taking water from lateral No. 2 of
plaintiff and running practically parallel with that
lateral but on a level or grade about 1.5 feet lower
than the grade of lateral No. 2, and shutting off the
"head" or flow of water in lateral No. 2. The de-
fendants commenced the construction of a lateral
practically parallel to lateral No. 1, and made a sur-
vey and staked out the same with an elevation or
grade of one and one-half feet lower than the exist-
ing parallel ditch. Thereafter and until and during
the irrigation season of 1925 the plaintiffs were un-
able to obtain a sufficient quantity of the water to
which they were entitled to irrigate their lands, and
as a result some of their crops dried up and some
of them were partially injured.

It is contended upon the part of these defendants,
and in mentioning defendants we omit Aubrey E.
Perry, that the testimony in the case does not warrant
the judgment rendered by the trial court for dam-
ages. Counsel for defendants also criticises the rule
as to the measure of damages which they contend was
adopted by the trial court.

A careful reading of the testimony shows that dur-
ing the year 1924, on account of the shortage of water
caused by defendants, plaintiff Verona B. Kinney's
crop of alfalfa upon the land which had formerly been
irrigated with the water from Pine Creek and which
she would have fully irrigated with such water (had
it not been for the interference of defendants), as
compared with the years immediately prior to the
shortage of water and under similar conditions, as to

season, etc., harvested 40 tons less than during the former years, and less than she would have harvested and stacked had she been permitted to use water to which she was entitled; that the market value of the alfalfa hay that season was $10 per ton in the stack and that the expenses of putting the same in the stack was $2 per ton, making the net value of the 40 tons, $320; that during the year 1925 on the same land her crop of alfalfa was short 17 tons for the same reasons, which was of the value of $10.50 per ton in the stack or a net value, deducting the cost of putting the same in the stack of $8.50 per ton, or of the total value of $144.50; that the damages to the ditches and cost of constructing new ditches of the plaintiff Kinney was $150, making a total of damages to the crop of $464.50, and making his total damage $615.50. This is arrived at by taking the minimum figures mentioned in the testimony. The trial court awarded plaintiff Kinney damages in the sum of $600. This award is supported by the testimony and is affirmed.

Estimating the damages of plaintiffs Laur, Neitert and their tenant Laffayette Skeen in the same way, we have the crop upon the leased Neitert land, so called—

|                      | 1924      | 1925      |
|----------------------|-----------|-----------|
| Harvested tons       | 228 tons  | 197 tons  |
| Shortage             | 60 tons   | 80 tons   |
| Net value per ton    | $8.00     | $8.50     |
| Net damage           | $480      | $680.00   |

The testimony shows that the cost of smoothing up the land torn up by the defendants and causing washouts was $150.

The Nietert lands were leased to Skeen during the year 1925. Under the lease Skeen as tenant was

entitled to one half of the damages to the hay crop for that year, $340.

The trial court awarded Skeen in the sum of $245, which award is affirmed. The plaintiffs Laur and Neitert are entitled to the one half for crop damage in 1925, $340, plus damages by washouts and to ditches, $150. For 60 ton of alfalfa shortage caused in 1924 at $8 per ton, $480, making the total figures of the Laur-Nietert damages, $970. The decree of the lower court awarded them damages in the sum of $727, which was a conservative estimate supported by the testimony and is approved.

The plaintiffs have not appealed from the judgment awarding damages.

3, 4. While the rule as to the measure of damages is perhaps not so important where a cause is tried by the court, without a jury, yet such rule for property negligently or tortiously destroyed by one not its owner is its value at the time and place of its destruction, yet when the thing destroyed is a growing and immature crop, such as alfalfa, the plaintiff, in order to prove his damages, may show the probable amount of alfalfa hay that the crop would have yielded had it been allowed to mature without being injured, judging from its condition and appearance at the time of its injury, as compared with other crops, in other years under like conditions, or in the immediate vicinity, together with the value of the crop at the market season, deducting therefrom the necessary cost of cultivation, harvesting and marketing: 12 Am. & Eng. Ann. Cas., note, p. 783, citing: *Anderson* v. *St. Louis etc. Ry. Co.*, 129 Mo. App. 384 (108 S. W. 605); *Hunt* v. *St. Louis etc. Ry. Co.*, 126 Mo. App. 261 (103 S. W. 133); *Thompson* v. *St.*

118 Or.—34

*Louis etc. R. Co.,* (Mo. App. 1907), 103 S. W. 135; *Sisk* v. *Gravity Canal Co.,* 52 Tex. Civ. App. 12 (113 S. W. 195). See, also, *International Agr. Corp.* v. *Abercrombie,* 184 Ala. 244 (63 South. 549, 49 L. R. A. (N. S.) 415); *United States Smelting Co.* v. *Sisam,* 191 Fed. 293 (112 C. C. A. 37, 37 L. R. A. (N. S.) 976); *Colorado Const. Land & Water Co.* v. *Hartman,* 5 Colo. App. 150 (38 Pac. 62); *Knowles* v. *Leggett,* 7 Colo. App. 265 (43 Pac. 154).

In the present case the market value of the crop, injured at the time for marketing the same, is correctly shown by the testimony and the estimate is made for "putting the alfalfa into the stack." Whether this covers the labor for irrigating or not in the absence of any testimony contradicting the estimate of the expense of harvesting and the value of the crop, it should not be presumed that the expense of irrigating the whole field would be any greater than it would be to irrigate the main part thereof with spots too high to be irrigated left out. We think the testimony forms a fair basis for estimating the damages.

In 8 R. C. L., page 380, Section 28, we are informed that where a crop is injured from time to time throughout its growing season until its maturity, but is not destroyed so that it is cultivated throughout the season, harvested and marketed, the damage to it may be lawfully measured by the difference between the value at maturity of the probable crop, if there had been no injury, and the value of the actual crop at that time, less the expense of fitting for the market that portion of the probable crop. After comments upon the several rules for the measure of damages to a growing crop, which was prevented from matur-

ing, by the injury, we find in 8 R. C. L., Section 26, page 379, the following:

"It has often been said that the measure of damages is the difference between the market value of the probable yield and the cost of maturing and marketing the same, but this rule has been criticised, and it may be more appropriately termed a method of determining the value of a growing crop rather than the measure of damages."

In the present case the testimony shows the perennial crop of alfalfa was marketed in the stack, so that the cost of marketing would not involve any expense of transportation. Whatever rule the court adopted in estimating the damages we believe that just compensation for the real injury done to plaintiffs by defendant was the result, which is the purpose of all remedies. There are no other assignments of error to be considered. The judgment of the trial court is affirmed.        AFFIRMED.

BURNETT, J., concurs in the result.