Argued at Pendleton October 30; affirmed November 21, 1939

## WALTER ET AL. *v.* ECHANIS ET AL.

### (95 P. (2d) 979)

In Banc.

*Pat H. Donegan*, of Burns, for appellants.
*Charles W. Swan*, of Vale (Lytle & Swan, of Vale, on the brief), for respondent.

BELT, J.  This is an action to recover damages for trespass by sheep on the land owned by plaintiffs. The allegations of the complaint, so far as material to the issues presented on this appeal, are that the defendants, between May 1, 1937, and June 23, 1937, drove and herded a band of approximately 1800 sheep over and upon land of the plaintiffs, thereby destroying the "grass and other herbage and pasturage thereon" and injuring and destroying the roots thereof to plaintiffs' damage in the sum of $500.

Defendants admit the trespass which, they aver, was due to inadvertence and mistake but allege the "injury to the premises and the amount of feed and pasture consumed thereby was not more than $15.00 or $20.00." Defendants tendered judgment in the sum of $40.

The cause was submitted to a jury and a verdict returned against defendants for $250. From the judgment entered on such verdict, the defendants appeal.

Plaintiffs' land on which the trespass occurred consisted of a 240-acre tract and a 320-acre tract, located in Barren Valley district in Malheur county, Oregon. The damage, however, resulted principally to the 240-acre tract upon which there is a strip of 80 to 100 acres of rye grass along Crowley creek. Rye grass is a native perennial in eastern Oregon. According to the Range Plant Hand Book, prepared by the Forest Service of the U. S. Department of Agriculture, "Giant wild rye is grazed to some extent while young, but soon becomes coarse and tough, and is not utilized as summer forage, if more palatable feed is available   *   *   *. This species is extensively cut for hay and, if moved early, provides fair roughage   *   *   *."

Defendants assert that the trial court improperly instructed the jury concerning the measure of damages to be applied to the issues under the pleadings. More specifically, the defendants contend that plaintiffs alleged an injury to the freehold and that, therefore, the proper measure of damages is the difference in value of the land before and after the trespass. Defendants say, in effect, that they could not, under the allegations of the complaint, be reasonably expected to come into court prepared to show the value of rye grass if crop had matured.

There is much diversity of opinion among the courts as to the measure of damages to be applied for the injury or destruction of growing crops. See numerous cases in notes 23 L. R. A. (N. S.) 310; 37 L. R. A. (N. S.) 976; 49 L. R. A. (N. S.) 415; 15 American Jurisprudence 260. The difficulty lies, however, not so much in the

statement of the rule of damages as in determining the kind of evidence to be admitted to show the damage sustained. We think, however, that the rule is well settled in this state. There is no need of encumbering the reports by a review of the numerous authorities in other jurisdictions.

■ In *Pacific Livestock Company v. Murray,* 45 Or. 103, 76 P. 1079—a sheep trespass case—the court said:

"The measure of damages was the reasonable value to the plaintiff of the grass or pasturage eaten or destroyed by defendant's sheep, together with the injury, if any, to the freehold."

*Laur et al. v. Walla Walla Irrigation Co. et al.,* 118 Or. 520, 247 P. 753, involved damages to a growing crop of alfalfa caused by wrongful interference with a water right. The court held that it was proper, in order to prove damages, to "show the probable amount of alfalfa hay that the crop would have yielded had it been allowed to mature without being injured, judging from its condition and appearance at the time of its injury, as compared with other crops, in other years, under like conditions, or in the immediate vicinity, together with the value of the crop at the market season, deducting therefrom the necessary cost of cultivation, harvesting and marketing   *   *   *", citing numerous authorities in support thereof. Also, to the same effect, see *Whetstone v. Rogue River Valley Canal Co.,* 133 Or. 121, 285 P. 229, 288 P. 406.

In the instant case the trial court instructed the jury that, in assessing damages, if any, no recovery could be had for "injury to grass roots" as such would be an "injury to the freehold, but just for the injury to the grass and herbage growing on the premises described if you find that they were damaged by defend-

ants." In another part of the charge, the court instructed "that the measure of plaintiffs' damages, if any, would be the reasonable market value to the plaintiffs of the grass or pasturage eaten or destroyed by defendant's sheep."

If the evidence showed the roots of the grass were actually destroyed, the above instruction was more favorable to the defendants than the law justifies. Where there has been an injury to the freehold and also to a growing crop, damages may be assessed for injury to both. No exceptions were taken by defendants to the above instructions, nor did defendants request any instruction concerning the measure of damages. Indeed, no assignment of error is predicated upon the instructions of the court. We have referred to the instructions given and the law applicable thereto in order to better comprehend the assignments of error relative to the admission of evidence about the value of the rye grass crop injured or destroyed.

It is urged that the court erred in permitting witnesses Robinson and Seaweard to testify about the probable amount of rye grass hay plaintiffs' land would have yielded and the value thereof had it been allowed to mature without being injured.

Previous to the testimony of the witnesses Robinson and Seaweard, Charley Walter testified that he had known plaintiffs' property for about 14 years and was "acquainted with other rye grass lands in that particular section." He said there was about 100 acres of rye grass in the smaller tract owned by plaintiffs. In response to the question, "And how does this ryegrass land of approximately 100 acres compare with the lands in that immediate vicinity that have been cut for ryegrass hay?" Walter answered, "*Well it is about on the average with most of them.*"

Andrew Robinson is a stockman of many years' experience and is well acquainted with range conditions in Malheur county, including the land in question. In reference to the rye grass on the land of the plaintiff, he thus testified: "It is a very rank growth of rye grass in that particular territory, on this ranch and the other lands." After the witness had shown the requisite knowledge of the land and the growing crop of rye grass thereon, he was asked: "Now predicated upon your experience with that type of forage, together with the observation of the growth as you have seen it on the lands of Grant and Fanny Walter, what would you say that hay would cut per acre?" and answered, "From three-quarters of a ton to a ton." Robinson also qualified as an expert witness on the value of hay, and testified it was, at that time and place, worth $10 per ton, less the cost of stacking and harvesting the same, which he said would be $2 per ton.

Win Seaweard is a cattleman who has lived in the Barren Valley country for about 40 years. The record discloses that he is thoroughly familiar with range conditions and the growth of rye grass on the land owned by the plaintiffs. He has had experience with rye grass lands and "cutting those lands for hay." He also testified with respect to the cost of cutting and stacking the rye grass hay and its market value per ton in the vicinity in question.

■■ No error was committed in the admission of the above testimony by Robinson and Seaweard. It was in keeping with the rule announced by this court in *Laur v. Walla Walla Irrigation Co.*, supra. Also, to the same effect, see 8 R. C. L. 382 and numerous authorities cited in support of the text. There was a sufficient showing of similarity of conditions between

the land in question and other land in that section of the state on which rye grass hay is produced. It was certain that plaintiffs had sustained damage—in fact the defendants so admitted by their tender of judgment. The only uncertainty that existed was the extent of the damage. The evidence received afforded a reasonable basis for the assessment of damages by the jury. The evidence offered was not too speculative and uncertain. Considerable latitude should be allowed in regard to evidence admissible to prove the value of a crop which has been injured or destroyed: 15 American Jurisprudence 257.

■■ On cross-examination the testimony of Robinson and Seaweard was somewhat shaken relative to the value of the hay, but that afforded no reason to strike the same. The fact that the testimony of a witness may contain contradictions or may be altered or modified on cross-examination is not ground for striking it out: 64 C. J. 211. The objection went to the weight of the evidence rather than to its admissibility. Absolute identity of conditions is unnecessary. The rule is that the conditions must be substantially similar. The testimony of these witnesses on direct examination conformed to the rule, although the weight of their testimony might have been affected on cross-examination. No error was committed in denying defendants' motion to strike the testimony of Robinson and Seaweard as to the value of the prospective crop of hay.

■■ Error is assigned by reason of the refusal of the court to permit Robert N. Stanfield, a witness for the defendants, to testify as to the market value of the land prior and subsequent to the time of the trespass. The court eliminated from consideration any injury to the freehold; hence such evidence was not relevant

under the issues. Furthermore, no offer of proof was submitted, and the court can only speculate as to the answer of the witness if he had been permitted to testify. Error is not presumed.

■ There is no merit in the defendants' motions for nonsuit and directed verdict.

The cause was fairly submitted and we see no reason to disturb the verdict of this jury, composed as it was of men who, no doubt, were well acquainted with range conditions and the value of rye grass hay in Malheur county.

The judgment is affirmed.

KELLY and BAILEY, JJ., not sitting.