Argued October 30, 1961, affirmed April 18, 1962

# CROSS ET UX v. HARRIS

370 P. 2d 703

*Ralph Currin,* Pendleton, argued the cause for appellant. On the brief were Currin & French.

*Gene B. Conklin,* Pendleton, argued the cause for respondents. With him on the brief was Robert N. Funk.

Before McAllister, Chief Justice, and Rossman, Warner, Sloan, O'Connell, Goodwin and Lusk, Justices.

## LUSK, J.

This is an action in trespass to recover damages for the partial destruction of growing crops caused by airplane spraying of such crops by the defendants with a poisonous chemical and herbicide.

The plaintiffs are the owners and operators of a farm in Umatilla County, Oregon. The defendant Clarence Harris is engaged in the business of aviation spraying and the defendant R. L. Witty was his employee and the pilot of the airplane which was used in spraying plaintiffs' crops. The date of the alleged trespass was April 8, 1960.

In a jury trial the plaintiffs recovered a verdict for $7,549.10. The jury also found that the trespass was not wilful and the court entered a judgment for double the amount of damages in accordance with ORS 105.815. The defendant Harris alone has appealed. He will be hereinafter referred to as the appellant.

Error is assigned to the overruling of a demurrer to the complaint based on the failure of the plaintiffs to allege compliance with ORS 573.210 and to the denial of motions for involuntary nonsuit and a directed verdict based on the same ground. The defendants did not in their answer allege failure of the plaintiffs to comply with the statute.

ORS 573.210 reads:

"No action against a custom applicator, arising out of the use or application of any pesticide, shall be commenced unless the claimant has filed a report of the loss with the department, and mailed

or personally delivered a true copy of such report of loss to the custom applicator allegedly responsible and a true copy of such report to the person for whom such work was done, within 60 days from the occurrence of such loss or within 60 days from the date when the claimant discovered that such loss had occurred. If the damage is alleged to have been caused to growing crops, the report shall be filed prior to the time when 50 percent of the crop is harvested."

In *Loe v. Lenhardt,* 227 Or 242, 362 P2d 312, we held that this statute should be given a liberal construction in favor of the claimant. No question of pleading or burden of proof was involved in that case, though it is of interest to note that the plaintiff did not plead compliance with the statute and the question was raised by an affirmative allegation in the answer. We held that the evidence showed substantial compliance and that a directed verdict against the defendant Lenhardt, the "custom applicator," based on the ground of noncompliance, was erroneously ordered.

■ The appellant argues that the requirement of the statute is "mandatory not directory" and, therefore, compliance with the statute is a condition precedent to the bringing of the action. We agree that the statute is mandatory in the sense that where it is properly made an issue in the case and it is shown that the plaintiff has not substantially complied with it he cannot recover. But to say that the statute is mandatory does not solve the problem. Statutes of limitation are mandatory also (see ORS 12.010), but they may be waived if not properly invoked by a pleading. Of course, there are express provisions governing the questions of pleading and proving the bar of the statute of limitations, and there are no similar provisions applicable to ORS 573.210. It becomes necessary,

therefore, to examine the nature of the requirement and the decisions of the courts in analogous cases. It is first to be observed that the plaintiffs are not seeking to enforce a right created by statute, but are pursuing a common law remedy. As we said in *Loe v. Lenhardt,* supra:

> "In the field of negligence actions against municipal corporations, where a verified claim is commonly made a condition precedent to the bringing of the action, the right to sue the governmental unit at all is a creation of the legislature and is thus clearly subject to legislative restrictions. (Citing authorities.) No such considerations apply in this case.

> "When a claim has been filed, full investigation made, and the claim rejected for some reason not connected with the form of the notice or its manner of service, the defects in the notice do not bar a meritorious action based upon a statutory right against a municipality. (Citing authorities.) *A fortiori,* the foregoing rule of liberal construction should apply when an attempt is made in good faith to comply with a statute which purports to limit a constitutional right to redress for injury to property caused by a private party who enjoys no special immunity." 227 Or at 256, 362 P2d at 319.

■ The fact that this is a common law action is decisive of the question under consideration. It distinguishes this case from *Sprague v. Astoria,* 100 Or 298, 195 P 789, which was an action against a municipality to recover damages for personal injury caused by a defect in a city street. Apart from statute, the city was immune to such an action. The city charter contained a requirement that the city should not be liable in such a case unless the person claiming damages within 30 days from the time of the accident or injury filed with the auditor and police judge a statement

of the claim, etc. The court held that compliance with the requirement was a condition precedent to the maintenance of the action. 100 Or at 303. Such requirements of municipalities are sustained as valid "in the case of claims growing out of torts on the ground that the liability of the municipality for tortious claims is only statutory in its origin and the Legislature may attach such conditions to the right to recover from the municipality for the tort as it deems proper or expedient." Dillon, 4 Mun. Corp. (5th ed) § 1613, quoted in *Birmingham v. Weston,* 233 Ala 563, 172 S 643, 109 ALR 970, 973. A like principle is applied to the statute of limitations where a statute confers a right and expressly fixes the time within which suit to enforce the right must be brought. 34 Am Jur 335, Limitation of Actions § 424.

Where, however, the statutory requirement for notice of injury is made applicable to an action to enforce a common law right it is held in many cases and, we think, correctly, that the requirement is in the nature of a statute of limitation and the same rules apply, namely, that if the defect appears on the face of the complaint it must be taken advantage of by demurrer, otherwise, by answer, and that if failure to give the notice is not pleaded by the defendant it is waived.

This was the holding in *Gellenbeck v. City of Mobridge,* 40 SD 157, 166 NW 631. Although this was an action against a municipality to recover for an injury caused by a defective sidewalk, it was not a statutory action, but one which was recognized in South Dakota as the enforcement of a common law right. The city contended that it was entitled to a directed verdict because there was no evidence to show that the plaintiff had complied with the provi-

sions of a statute which required notice to be given of the injury within 60 days after its occurrence, but the court held that the failure to give the notice must be pleaded and that the defendant, not having done so, was not in a position to raise the question in the trial court or on appeal. The court said:

"Where such a statutory notice does not constitute an essential element of the cause or right of action, but relates solely to the remedy, it is in the nature of a statute of limitation. Where the notice constitutes an element of the cause or right of action, as distinguished from remedy, or where it is an essential element of both right of action and remedy, it is held to be a condition precedent to the right to institute the action, in either of which cases the giving of the notice must be alleged and proven by plaintiff as a necessary part of his cause of action. The basic cause of plaintiff's cause of action in this case was common-law tort negligence, of which the giving of the notice in question formed no essential part. The negligence mentioned and comprehended in this statute in question relates and refers to common-law tort negligence for failure to observe some legal duty which the defendant city or town owed to the injured plaintiff. Where, however, the right of action itself is created by statute, and such statute requires such a notice to be given before suit, then the giving of such notice is included in and becomes a part of the right upon which the recovery is based, as the right to recovery in such cases depends upon the statute, * * *." 40 SD at 161.

To the same effect see *Hamilton v. City of Anniston,* 268 Ala 559, 109 S2d 728; *Hawley v. City of Johnstown,* 40 App Div 568, 58 NYS 49; *Zack v. Saxonburg Borough,* 386 Pa 463, 473, 126 A2d 753; *Beane v. City of St. Joe & Inv. Co.,* 211 Mo App 200, 210, 240 SW 840; *City of Huntsville v. Goodenrath,* 13 Ala App

579, 585, 68 S 676. In view of these authorities we think that it was incumbent upon the appellant to allege and prove failure to comply with the statute under consideration and that, not having done so, the objection was waived.

The other contentions of the appellant, which were raised in various ways on the trial, all come to the same point, that is, the claimed insufficiency of the evidence of damages. The appellant's brief has consolidated the discussion of the various assignments of error under this head and we shall do the same.

The crops alleged to have been damaged consisted of barley and wheat. The defendants' argument is in two parts: first, that the evidence is too speculative to support a verdict for more than nominal damages and, second, that, in any event, there is no evidence that damage to the barley was caused by the alleged trespass.

The trespass is admitted. The appellant was employed by Richard S. Clark to spray the growing crop of wheat on Clark's farm which is immediately south of plaintiffs' property. The pilot of the spray plane by mistake sprayed the crops on the plaintiffs' land. As stated in the appellant's brief:

"* * * The real property of the plaintiffs and Mr. Clark lies in parallel canyons, the Clark property lying at a higher elevation; and to prevent erosion, both farmers employed the practice of strip cropping. When the defendant R. L. Witty, the pilot of the spray plane, was instructed to spray the strips of growing crop owned by Mr. Clark, by error, due to the similarity of the geography, the spray was applied to the crop of the plaintiffs, which, because the crop was not at the proper stage of development, resulted in damage, and this action subsequently followed."

■ The measure of damages in a case of injury to growing crops is the difference between the value of the crop immediately before and immediately after the injury, to be ascertained by taking the value at maturity which the crop would have had but for the injury and deducting the value which the injured crop actually had at maturity and deducting, further, any reduction in amount and value of labor and expense attributable to the reduced yield. *Walter v. Eschanis,* 163 Or 148, 151, 95 P2d 979. See 3 Am Jur Proof of Facts 532. Substantially, the court so instructed the jury and no exceptions were taken to any of the instructions and no complaint is made in this court on that score.

■ If, therefore, the plaintiffs' crops were damaged as the result of the trespass (and this, as we have seen, is admitted) the only question is whether the evidence as to the extent of the damage is sufficient. Upon that question it is to be borne in mind that the mere fact that damages may not be exactly calculated is not sufficient reason for disallowing them. *Sol-O-Lite Laminating Corp. v. Allen,* 223 Or 80, 93-94, 353 P2d 843; *Buck v. Mueller,* 221 Or 271, 282, 351 P2d 61.

In the complaint the damages were pleaded with considerable particularity. Five different items were alleged, each having regard to a different field in the plaintiffs' farm. Item one, for example, alleged "a loss of barley of 857.8 pounds per acre on 48 acres, or a loss of 18.716 tons at $35 a ton or a loss of $655.06." The other four items, one for a loss of barley and the remainder for the loss of wheat, are set forth in the same manner.

The plaintiffs proved that the crops were sprayed with a mixture of butylester and water, commonly called 2-4-D, and that the spraying was done too early.

The young barley was just coming out of the ground, some of the wheat was ready to spray, but some was not; it was not "fully tillered". The plaintiff Truman A. Cross, Jr., explained the meaning of "tiller" in his testimony: "Each wheat plant grows up and has several stalks; each stalk is a tiller. Each wheat plant when it is fully tillered has about five stalks per plant." It is then, but not before, that wheat may be sprayed without danger of substantial injury. The witness testified that these things are also true of barley. There was evidence given by Dean G. Swan, a research agronomist for Oregon State University, to the effect that damage was likely to be done to growing crops by the premature spraying of them with 2-4-D and evidence—some of it demonstrative— of actual damage sustained by the plaintiffs' barley and wheat crops. The yield from the sprayed fields was shown in pounds or bushels and the prices received, and the greater yield from comparable fields was shown to afford a basis for calculating the extent of the damage in dollars.

■■ The appellant asserts that evidence was admitted of the yield from fields not sprayed by the defendants (which were a part of the plaintiffs' farm) without any showing that the conditions were comparable. Appellant says there was no proof that they were of "the same fertility, had the same fertilizer applied or that crops were raised under controlled conditions which would give a fair measure of the damage." The testimony of Mr. Cross was that the soils in the different fields were comparable and that in prior years the yields of comparable crops from them were very nearly the same. On cross examination the witness testified that the same type and poundage of fertilizer were used on the damaged and undamaged

fields. We do not know what the reference to "controlled conditions" means. Whatever may be its significance, counsel for the defendants could have developed the subject either on cross examination or in his own case, but refrained from doing so. In our opinion, the evidence shows a sufficient similarity of conditions in the various fields to afford a fair standard of comparison for the assessment of damages. Considerable latitude should be allowed in the admission of evidence to prove the value of a crop which has been injured or destroyed. *Walter v. Eschanis,* supra, 163 Or at 154.

■ It is said that the barley was sprayed by the plaintiffs after it was sprayed by the defendants and that, therefore, there is no basis for determining whose act was responsible for the injury to the barley crop. It appears that the barley was not intentionally sprayed by the defendant Witty, but the evidence supports an inference that the damage to the barley was caused by drift from the plane. 2-4-D applied to the barley in its stage of growth on April 8, 1960, was likely to cause damage, but, as the chemical could safely be used later when the plaintiffs sprayed the barley crop, it was a legitimate inference that it was the earlier, not the later, spraying that caused the damage.

■ It is further contended that the evidence shows that the pilot of the airplane used 90 gallons of 2-4-D in spraying the plaintiffs' crops and that this was only sufficient to spray 45 acres. Therefore, it is argued, the jury could have found damage to the crops on 235 acres, as alleged in the complaint, only by resort to speculation; but we think that the evidence relied on by the appellant, while contradictory of the plaintiffs' case, does not destroy it. The plaintiffs produced evidence of damage to their barley and wheat

crops on 235 acres caused by the spraying of the crops by the defendants. In the absence of demonstration that it was a scientific impossibility for 90 gallons of 2-4-D to cause damage to the extent indicated by the evidence on behalf of the plaintiffs, the conflict was one to be resolved by the jury.

For reasons connected with the United States Government's farm program, the plaintiffs were required to destroy, instead of harvesting, the barley crop on a field comprising 76 acres damaged by the spraying. There was a resultant reduction in plaintiffs' costs. As to this, Mr. Cross testified that "chiselling [that is, plowing under] probably cost two or three dollars per acre, and harvesting would run probably around five or six dollars per acre." This testimony is claimed to be speculative on the authority of *Parker v. Harris Pine Mills, Inc.,* 206 Or 187, 194, 291 P2d 709, 56 ALR2d 382. In that case a witness was asked to "estimate" the amount of timber cut from a certain area. An objection to the question was overruled and the witness answered "between 6,000,000 and 7,000,000 feet." On cross examination he admitted that his answer was "absolutely just a guess" and "I could say there was either 6 or 7 or 5". In the present case the witness was asked to state what it cost him to destroy the barley in comparison to the cost of harvesting it. The question was not subject to objection, but if the answer was speculative, the appellant should have moved to strike it out instead of waiting to raise the question on appeal. Had such a motion been made and sustained, the plaintiffs conceivably could have supplied more exact evidence. The reduction in plaintiffs' cost due to the fact that the field was plowed instead of harvested was a comparatively minor item, and on this record we think that we are not called

upon to inquire into the question whether the evidence was too speculative to have been submitted to the jury.

Other criticisms of the evidence need not be specifically mentioned. Like some of those already discussed, they go to the weight of the evidence rather than its sufficiency. The question of damages was for the jury. The record is free from error and the judgment is affirmed.