**DECATUR COUNTY AG–SERVICES, INC., Defendant-Appellant,**

v.

**Sylvester YOUNG, Plaintiff-Appellee.**

No. 1–979A236.

Supreme Court of Indiana.

Oct. 1, 1981.

John P. Schuerman, Comer & Schuerman, Osgood, for defendant-appellant.

Larry L. Eaton, Johnson & Eaton, Versailles, for plaintiff-appellee.

## ON PETITION FOR TRANSFER

PRENTICE, Justice.

This cause is before us upon the petition of Defendant (Appellant), Decatur County AG–Services, to transfer the cause from the Court of Appeals, First District, which affirmed a judgment in favor of Plaintiff with an opinion published at 401 N.E.2d 731.

■ Transfer is granted pursuant to Ind. R.App.P. 11(B)(2)(b) in that the Court of Appeals has erroneously decided a new question of law, *i. e.*, the method to be used in determining the damages for destruction of a growing crop having no ready market value.

■ We adopt the statement of facts and issues as written by the Court of Appeals, as follows:

"The facts favorable to the appellee disclose that Young contracted with Decatur in the summer of 1976 for Decatur to aerially apply an insecticide to his eighteen acre soy bean field which was being attacked by grasshoppers. After the spraying, Young detected damage to his crop. As a result of the negligent spraying, the crop's growth was retarded and the field yielded approximately thirty one bushels per acre. Prior to the damage, this particular soy bean field was of above average quality, in fact of exceptional quality, and located on good farmland. The average yield that year for soy bean fields of above average quality in this locality was forty to fifty bushels of beans per acre with many outstanding fields exceeding fifty bushels per acre.

"Young harvested his soy beans and stored them in his own storage bins, which had a capacity of eleven hundred bushels. He held the beans for sale until after the planting period the following year, at which time he sold the beans for amounts ranging from $8.86 per bushel to $10.38 per bushel. Young transported the beans from storage to market in his own truck. He explained that his usual procedure was to store his soy beans until after the next year's planting before selling them. The trial judge found that Young would have realized a yield of fifty bushels of soy beans per acre if his crop had not been damaged. Thus, the difference between the potential yield and the actual yield for the eighteen acres was three hundred and forty two bushels of beans. The court further found that Young was entitled to $3,420 in damages, which was equal to a price of ten dollars per bushel for the lost portion of the crop.

"The sole issue on appeal is the propriety of the damages awarded. Decatur asserts that the damages were speculative, excessive, and contrary to law. Decatur bases this claim on three points. First, Decatur challenges the sufficiency of the evidence to support the trial court's determination that Young's undamaged crop would have yielded fifty bushels per acre and therefore, Decatur argues for the application of an alternative measure of damages based upon the rental value of the property. Second, Decatur asserts the trial court erred in determining the value of the lost portion of the crop based upon market prices at the time Young sold his crop rather than the prevailing market price at the time of harvest.

Decatur argues that Indiana law requires the determination of value to be made at the time of harvest. Finally, Decatur argues that the trial court erred by failing to consider Young's reduced expenses for cultivating, marketing, and storing his crop, due to the reduced yield, when computing the damage award.

"We note that when a case is tried by the court, the trial judge's decision will not be overturned unless it is clearly erroneous. *Young v. Bryan*, (1977) Ind.App., 368 N.E.2d 1; *University Casework Systems, Inc. v. Bahre*, (1977) Ind.App., 362 N.E.2d 155.

"We find ample evidence to support the trial court's determination that, but for the damage to the crop, Young would have realized a yield of fifty bushels of soy beans per acre. There was evidence introduced indicating the quality of the crop prior to damage, the quality of Young's farmland, and the yields for comparable crops in the locality.[1] We also note that Decatur's authority for an alternative measure of damages involved a factual situation different than the case at bar. *Jay Clutter Custom Digging v. English*, (1979) Ind.App., 393 N.E.2d 230. In that case, the crop was never planted and so no determination of the crop's quality was possible."

The trial court and the Court of Appeals erred in holding that the plaintiff's damages could be ascertained with reference to the price obtained by him when he sold his diminished crop the following year, as was Plaintiff's custom.

▬ The rule was correctly expressed in *Cutler Cranberry Co. v. Oakdale Electric Cooperative*, (1977) 78 Wis.2d 222, 229, 254 N.W.2d 234, 238, as follows:

"The measure of damages for injury to or partial destruction of a growing crop is the difference between the crop's value immediately before and after the injury or partial destruction. Under this rule, the most generally accepted method for determining damages for such injury to a crop is to compute the difference between the value at maturity of the probable crop if there had been no injury and the value of the actual crop at maturity, less the expense of cultivation, harvesting and marketing that portion of the probable crop which was prevented from maturing."[2]

*Accord, Gilliland v. Rodriguez*, (1954) 77 Ariz. 163, 168, 268 P.2d 334, 337; *Casey v. Nampa and Meridian Irrigation District*, (1963) 85 Idaho 299, 304, 379 P.2d 409, 411–12; *Martin v. Jaekel*, (1971) Iowa, 188 N.W.2d 331, 333; *F. A. Bartlett Tree Expert Co. v. Stamper*, (1948) 306 Ky. 311, 314–15, 207 S.W.2d 752, 754; *Mid-Continent Aircraft Corp. v. Whitehead*, (1978) Miss., 357 So.2d 122, 125; *Happy v. Kenton*, (1952) 362 Mo. 1156, 1166, 247 S.W.2d 698, 705; *Whitaker v. Earnhardt*, (1976) 289 N.C. 260, 266–67, 221 S.E.2d 316, 320–21; *Eichenberger v. Wilhelm*, (1976) N.D., 244 N.W.2d 691, 697; *Burke v. Thomas*, (1957) Okl., 313 P.2d 1082, 1089–90; *Cross v. Harris*, (1962) 230 Or. 398, 406, 370 P.2d 703, 707; *Swenson v. Chevron Chemical Co.*, (1975) 89 S.D. 497, 506, 234 N.W.2d 38, 43–44; *International Harvester Co. v. Kesey*, (1974) Tex., 507 S.W.2d 195, 197.

The above stated rule does limit the time for computing damages to the time of the crop's maturity or harvest. The purpose of damages is to compensate the injured party for the loss suffered. *City of Gary v. Falcone*, (1976) 169 Ind.App. 295, 296, 348 N.E.2d 41, 42; *Pixley v. Catey*, (1936) 102 Ind.App. 213, 214, 1 N.E.2d 658, 659. From the record the trial court could have found and did find that Defendant's negligent

---

1. The trial court's consideration of these facts in determining the damages was proper. *Watkins v. Gulf Refining Co.*, (1944) 206 La. 942, 966, 20 So.2d 273, 281; *Cross v. Harris*, (1962) 230 Or. 398, 408, 370 P.2d 703, 708.

2. The concept of determining the value of a growing crop before and after an injury by a

consideration of the difference in value of the harvested crop and what its value would have been, but for the injury, was recognized in *Louisville, New Albany & Chicago Railway Co. v. Sparks*, (1895) 12 Ind.App. 410, 412, 40 N.E. 546, 547.

spraying deprived Plaintiff of three hundred forty-two (342) bushels of mature beans. Because many crops, in their immature state, have no market value, damages are computed at the time of harvest, when a market value first exists. To the extent that Plaintiff elected not to sell his harvest at the time it was first marketable, he was speculating that its market value would be greater at some subsequent date. The risk inherent in such speculation is not chargeable to the defendant. The lost beans could have been replaced from the market place at the time of harvest. Whatever this market value was at that time was the gross loss and, in this case, the extent of Plaintiff's damages.

Speculation about lost profits of this nature is not permitted. *Egs., Simplex Railway Appliance Co. v. Western Rawhide & Belting Co.*, (1909) 173 Ind. 1, 13, 88 N.E. 682, 686 (length of time to re-establish a burned out business held speculative); *Connersville Wagon Co. v. McFarlan Carriage Co.*, (1905) 166 Ind. 123, 129, 76 N.E. 294–296 (profits lost on the manufacture of vehicles held speculative where defendant breached a contract to supply wheels); *Montgomery County Union Agricultural Society v. Harwood*, (1891) 126 Ind. 440, 26 N.E. 182 (lost profits for candy not sold at a fair held speculative where defendant breached a contract not to allow competitors on the grounds); *Western Gravel Road Co. v. Cox*, (1872) 39 Ind. 260 (claim for loss of tolls held speculative in suit for defendant's failure to complete a road on the contracted date).

The cause must be remanded to the trial court for a redetermination of damages consistent with this opinion.[3]

Finally, Decatur argues that the trial court erred in failing to deduct any saving to Young for reduced costs.

"Although the costs of producing and marketing a crop should be deducted where it appears that costs were reduced by the lower yield, (citation omitted), the evidence here indicates that no substantial cost reduction occurred." *Wm. G. Roe & Co. v. Armour & Co.*, (5th Cir. 1969) 414 F.2d 862, 872 (applying Florida law); *Accord*, 21 Am.Jur.2d, *Crops*, section 79, p. 665 (1965).

Plaintiff harvested the beans himself. He provided his own storage, transportation and care of the crop, and the record discloses that Plaintiff realized no consequential savings because of the reduced yield.

The judgment of the trial court as to the damages owing is reversed and the cause is remanded to the trial court to redetermine such damages in accordance with this opinion.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.

---

**3.** On cross-examination Plaintiff testified that beans were around seven dollars ($7.00) at harvest time. Defendant's brief in the Court of Appeals acknowledges that this figure is undisputed.