Hillsborough, }
Jan. 7, 1936. }

William D. Lamarche, Jr. *v.* Domina Lamarche, & a.

*Sullivan & Sullivan (Mr. Thomas E. Dolan* orally), for the plaintiff.

*Devine & Tobin (Mr. Tobin* orally), for the defendants.

BRANCH, J. At the time of the accident, which happened on or about August 9, 1931, the plaintiff was employed by the defendants in their garage in Manchester. The evidence tended to show that while he was attempting to pour sulphuric acid from a large carboy enclosed in a wooden crate, a drop of acid splashed into his right eye and caused an almost complete loss of vision therein.

The claims of negligence asserted by the plaintiff were (1) that the work-place provided by the defendants was dark and for that reason unsafe; (2) that no warning was given to the plaintiff of the nature and dangerous character of the substance which he was required to use; and (3) that no instructions were given as to the precautions which should be taken in handling it.

By their third request, hereinafter considered, the defendants asked that the issue of an unsafe work-place be withdrawn from the jury. In regard to the other two claims of negligence they concede that there was evidence for the jury, if it could be found that the plaintiff was ignorant of the dangers incident to his employment. In support of their motion for a directed verdict, however, they contend that in view of the plaintiff's past experience it must be found that he knew or should have known of the dangerous character of the substance which he was handling. Upon this premise it is argued that "the defendant cannot be found liable for failing to instruct an experienced workman who himself knew or ought to have known of the danger" and that the danger was "so manifest and palpable that it must be held that plaintiff assumed the risk of it."

In support of this argument it is pointed out that the plaintiff had worked in garages for two periods aggregating from five to seven years before he was injured; that for six to nine months before the accident he had been caring for batteries; that during that time he had filled about 1000 batteries and had poured acid from the carboy about 350 times; that before he undertook this job he had watched a man doing the same work for about one year in order to learn how it was done; that on the outside of the wooden crate in which the carboy was enclosed were printed the words "Battery acid 1400 test."

On the other hand the plaintiff testified that up to the time of this occurrence he did not know the nature of the liquid which he was handling; that he had never been informed that it was acid or warned of its dangerous character or instructed as to the proper method of handling it. He "thought it was some kind of stuff prepared for the batteries" but "didn't know it was dangerous." Upon cross-examination he stated that, after the accident, he was told that on the outside of the wooden crate in which the carboy was enclosed were printed these words, "Battery acid 1400 test" but that he could not read English, and that before the accident he never looked at this inscription. The defendant Domina Lamarche testified that he knew of the dangerous character of the acid but that he could not remember telling the plaintiff that it might burn him or giving him "any instructions of any kind."

Although the circumstances enumerated by the defendants furnished the basis for a persuasive argument to the jury, it cannot be said, as a matter of law, that they destroyed the force of the plaintiff's direct testimony, to which he consistently adhered under severe cross-examination. We are, therefore, of the opinion that the question of the extent of his knowledge was properly submitted to the jury.

Even if it were to be assumed, however, that the plaintiff was chargeable with knowledge that the acid was dangerous and that contact with it would be injurious, it could not be held, as a matter of law, that he "appreciated the risk of the particular danger" (Fontaine v. Company, 76 N. H. 163; Zajac v. Company, 81 N. H. 257) from which his injury resulted. With reference to the extraordinary risks, it is a fundamental principle that "prima facie, a servant does not assume any risks which may be obviated by the exercise of reasonable care on the master's part." 3 Labatt, M. & S. (2d ed.) ss. 894, 1178; Maltais v. Concord, 86 N. H. 211, 213. Consequently, the decisive question in the present case is not whether the plaintiff knew that the acid was dangerous, but whether he realized that the negli-

gent method of handling the carboy permitted by the defendant was likely to cause him to come in contact with the acid. It cannot be said, as a matter of law, that by reason of his previous experience the plaintiff was chargeable with knowledge of this danger.

During the course of his cross-examination the plaintiff testified as follows: "Q. If you had known this acid would burn if it got on your clothes or got on your hands or got into your eye, what would you have done? A. If I knew? Q. Yes. A. I would be careful if I knew that acid was dangerous. Q. You don't think you were careful then when this accident happened? A. I wasn't doing it foolish. Q. You were not handling it careful? A. I didn't know it was dangerous. ... Q. Listen; you didn't know it was dangerous so you were careless about the way you handled it? A. Yes." The substance of this testimony was repeated several times in varying forms.

The defendants requested the court to charge the jury as follows: "4. I instruct you that if you are convinced that the plaintiff prior to the accident knew or had reasonable cause to believe that the acid, if it splashed, might burn or injure him, then your verdict must be for the defendant because on his own testimony he admitted he handled the 'carboy' in a negligent manner." This request was denied and the defendants excepted.

It is now argued that, under the rule stated in *Harlow* v. *LeClair*, 82 N. H. 506, the plaintiff is bound by his statement that he handled the carboy in a manner which would have been careless if he had known the nature of its contents and that since his knowledge of its contents might be inferred from other testimony in the case, the conclusion stated in the request followed necessarily as a matter of law.

This argument is without merit. The plaintiff fully described the way in which he handled the carboy in language which does not require repetition here. His subsequent statement that he was "careless" because he did not know it was dangerous cannot be regarded as a statement of fact "peculiarly within his knowledge" by which he is irrevocably bound under the rule stated in *Harlow* v. *LeClair*, *supra*. On the contrary, it amounted to nothing more than an expression of opinion, put into his mouth by defendants' counsel with reference to one of the questions which the jury was called upon to decide.

The plaintiff testified that the carboy was "kept under the stairs" and that at the time of the accident there was no light "in the corner under the stairs." Upon cross-examination he testified as follows:

"Q. Whether it was light or dark didn't make any difference did it? A. No. Q. So no matter how dark the place was it didn't make any difference in the accident, it was simply the box slipped, it was too heavy? A. In one way if it was light it would be better. Q. Why? A. You could see better. ... Q. So the light would not help you? A. If we had a light I could see to hold the thing right and to hold the other box right. ... Q. The whole accident was caused by the box slipping from your hands, isn't that right? A. Yes, sir. Q. And the light made no difference, did it? A. No, sir."

With reference to this and other similar testimony the defendants requested the following instruction: "3. I instruct you on this evidence that the failure to light the space behind the stairs where the 'carboy' was kept is immaterial because that failure, if any there was, had no causal effect in bringing about the accident."

In view of the plaintiff's statement above quoted, that if there had been a light he would have been able to "see to hold the thing right" there was no error in the denial of the above request.

*Judgment on the verdict.*

All concurred.