Hillsborough, May 1, 1945. } No. 3528.

JOSEPH GEORGE BLAIS *v.* FLANDERS HARDWARE COMPANY.

*Paul E. Nourie* (by brief and orally), for the plaintiff.

*Alvin A. Lucier* (by brief and orally), for the defendant.

JOHNSTON, J. The defendant claims that it could not reasonably be found that the plaintiff did not assume the risk of the hazard that resulted in his injury. The plaintiff Blais of course knew that if his hand came in contact with the swiftly revolving knives, it would be cut. But there is a further question of whether he knew and appreciated that the operation he engaged in would result in such contact. "Even if it were to be assumed, however, that the plaintiff was chargeable with knowledge that the acid was dangerous and that contact with it would be injurious, it could not be held, as a matter of law, that he 'appreciated the risk of the particular danger' . . . from which his injury resulted." *Lamarche* v. *Lamarche*, 87 N. H. 454, 456. "The gist of the plaintiff's case is that he did not know and appreciate the peculiar and extra hazard of doing the work in the way he did it." *Disalets* v. *Company*, 74 N. H. 440, 443. *Demers* v. *Becker*, 91 N. H. 519.

Prior to the accident, August 14, 1942, the plaintiff had been working on a converted wood-turning lathe since the former operator left six days before. The use made of the lathe was to shape hand guards for army rifle barrels. Two were processed at a time. In front of and at right angles to the line of vision of the operator was a spindle or mandrel to which the two pieces of wood about a foot long were dogged. By means of a lever moved with the right hand, the spindle then was pushed against knives revolving at high speed so that the rifle guards acquired the desired shape, after which they were withdrawn and the dogs released by a different lever. On being released, the wooden pieces ordinarily fell to the table from the spindle, when a new pair were dogged to the spindle and treated in their turn. The knives were five and one-half inches in the rear of the spindle. So that they would fit to the round spindle, the pieces were grooved in an earlier process. Because of the fact that the grooving was sometimes not properly done, the pieces occasionally stuck to the spindle. More than once Mr. Blais complained about this to his superiors. He was told to have the groove operator reset his machine and this the plaintiff did, but he was given no instructions as to the removal of the pieces and testified that he did not know that it was more dangerous when a piece stuck. He, himself, devised a method of loosening the pieces, which he followed to the time of the accident. This was to remove them with the fingers of his left hand, the palm being held upward and underneath the spindle and any pull of the hand being toward the operator. This way was used with the lathe in operation and was ob-

served by the boss in charge of the machines. It could reasonably be found that the defendant approved of dislodging the pieces that stuck with the machinery in motion. When the accident happened, for the first time the plaintiff was unable to loosen a piece by the means used until then. The farther one stuck to the spindle too firmly. He put his left hand over the spindle and with a rotary motion of the hand tried to shake the piece loose. It came off suddenly and his hand went in the direction of and against the revolving knives.

Previous to working on the converted hand-fed machine, Mr. Blais had run five automatic lathes. These were automatically fed from magazines that were placed between the knives and the operator. If the feeding was interrupted, the machine was stopped and the work continued on the other four machines. The work on the converted lathe was in performance of an army order and stopping the machine would mean that the operator would be turning out no work.

The plaintiff Blais did not intend that his hand be pushed toward the knives. Under skillful cross-examination he was led to say that the motion of his hand was toward the knives and that he was pushing his hand toward them. It could reasonably be found that he was describing the inadvertent result of the rotary motion of his hand in attempting to shake loose the wood, and not a purpose of his to push substantially in the direction of the knives. More than once he explained on the witness stand that he was merely shaking the obstinate piece with perhaps a rotary motion of the hand. "Q. You were pushing it towards the knives? A. I didn't push it. I just shook it." At the time of this operation, Mr. Blais had his left thumb around the spindle so that his hand would be held from getting into danger, but for some reason he miscalculated. The jury found that he was in the exercise of due care. Suddenly the wood gave way and the harm was done. The wood had stuck more firmly than the employee knew or appreciated. The power of his muscles suddenly released carried his hand into the knives. He had not intended such a movement.

What the plaintiff did not understand or appreciate was the tenacity with which the grooved wood might cling to the spindle, and the consequent danger of removing it with the hand over the spindle. Always before during his five or six days on the converted machine he had been able to loosen the wooden pieces with the method of the palm up. This he knew to be safe. For the first time he en-

countered work that clung to the spindle with a grip that he could not loosen in the usual way. He did not know or appreciate the force that would be needed to dislodge it, and believed that it was so little more than what was ordinarily required that he could loosen the piece with his hand over the spindle. He had not been told, and had no reason to know from experience, that the wood might cling to the spindle so firmly that the release of it would send his hand into the knives away from himself. "'Unless a servant's actual or constructive knowledge of those factors which enter into his injury is substantially complete,' he cannot be held to have assumed the risk. *Kruger* v. *Company*, 84 N. H. 290, 295. . . ." *Boucher* v. *Company*, 91 N. H. 215, 217, which cites other cases in support of this principle. The plaintiff should have been warned of the danger of the method he used for the first time and informed of the reason for it and of a safe way, such as the use of a stick or even stopping the machine. The case is one to be decided by the jury.

Two views were given the jury of the machine upon which the plaintiff was working when the accident took place. There was no guard on it at the first view, but there was at the second. This guard was devised and installed after the accident. The Court first ruled that the guard should be exhibited to the jury in the courtroom without information as to its origin. This was found to be impracticable. At the time of the second view, which was duly excepted to by the defendant, the jury was instructed by the Court that the guard on the machine was not evidence that the defendant was careless in not installing one before the accident, but was in support of the plaintiff's claim that "a similar guard could and should have been used before the accident." The plaintiff's expert on direct examination testified that there was a guard on the machine when he first saw it, but not the second time at the view by the jury. A motion for mistrial by the defendant was denied subject to exception. The matter of subsequent repairs of a machine or place ordinarily is not admissible in evidence. "It is unjust to hold that a correction of defects so disclosed, and made to prevent other similar injuries, is evidence that the accident itself was due to negligence. The doctrine, so far as it tends to restrain or delay the correction, is unwise — injurious to the public safety. Ordinary care is the standard of duty. Between reasonable and possible precaution the distance may be wide. A defendant who has exercised ordinary care to avoid injuring others, should be at

liberty to exert extraordinary diligence without liability to have his action used as evidence of previous negligence." *Aldrich* v. *Railroad*, 67 N. H. 250, 251. "Persons are loath to take precautions which may be used as evidence against them. . . ." *Christie* v. *Company*, 87 N. H. 236, 238. "The inadmissibility of evidence to prove such facts [repairs made after an accident] has invariably been sustained." *Ware* v. *Railroad*, 92 N. H. 373, 376, and cases cited. It is true that such evidence was admitted in *Bixby* v. *Thurber*, 80 N. H. 411, to establish an issue of control as between landlord and tenant, and in *Reynolds* v. *Company*, 81 N. H. 421, to contradict an untruthful statement and prevent what amounted to fraud on the Court. "Evidence of subsequent repairs not being competent to show negligence, it should not be used for other purposes incidentally in issue unless the reasons therefor are counterbalancing." *Smith* v. *Company*, 83 N. H. 439, 450, 451. In the present case, the fact of a practical safeguard for the machine involved in the accident was not disputed, and descriptive testimony could readily be given concerning it. Accordingly, evidence of the use of the guard after the accident was inadmissible and a view in support of it improper because of public policy as set forth in the above authorities. A party is entitled to have incompetent evidence excluded, regardless of how material and relevant it may be. The exception to the ruling permitting a view of the safeguard on the machine at the defendant's shop, which device had been put in use since the accident, is sustained. It is unnecessary to rely upon the perhaps inadvertent language that the view was in support of the claim that a guard "should have been used." The plaintiff's expert on direct examination testified that he saw the guard on the machine at the time of his first visit. It is unnecessary to decide whether the prejudice of this incompetent evidence could have been removed by the plaintiff's having the evidence stricken out and appropriate instructions given, as no attempt was made to do this. Under the circumstances the failure to grant the motion for a mistrial was error.

The employee whose place was taken by the plaintiff was asked whether he was given any instructions concerning the removal of pieces that stuck. An answer in the negative was permitted subject to exception. Evidence of a similar but unconnected negligent occurrence is not admissible to prove carelessness. *Wentworth* v. *Smith*, 44 N. H. 419.

*New trial.*

Branch, J., did not sit: Burque, J., was absent: Page, J., concurred: Marble, C. J., was of the opinion that there is no evidence from which it could fairly be found that the plaintiff did not assume the risk.