Argued November 1, 1976, reversed and remanded February 25, 1977

# SAMUEL, *Appellant,*
## *v.*
# VANDERHEIDEN, *Respondent.*
## (TC 35007, SC 24458)
### 560 P2d 636

Lyle C. Velure, Medford, and David R. Vandenberg, Klamath Falls, argued the cause for appellant. With them on the briefs were Hugh B. Collins and Collins, Velure & Heysell, Medford.

Lynne W. McNutt, Coos Bay, argued the cause for respondent. With him on the brief were McNutt, Gant & Ormsbee and Ronald L. Gould, Coos Bay.

Before Denecke, Chief Justice, and McAllister,* O'Connell,** Holman, Tongue, Howell and Bryson, Justices.

TONGUE, J.

---

*McAllister, J., resigned December 31, 1976.
**O'Connell, J., term expired January 3, 1977.

## TONGUE, J.

This is an action for damages for medical malpractice for negligence in failure to diagnose cancer in plaintiff's breast. After an adverse jury verdict and judgment the plaintiff appeals, contending that she did not have a fair trial because of various alleged errors in the conduct of the trial.

One of the errors complained of by plaintiff is that after defendant's expert witness had testified, in effect, that in his opinion the defendant was not guilty of malpractice, based upon defendant's testimony and clinical records, the plaintiff was not permitted to cross-examine defendant's expert witness by a hypothetical question based in part upon facts testified to by plaintiff which were conceded to be important facts in making a proper diagnosis, but which were denied by defendant.

### Plaintiff's testimony.

Plaintiff testified that on March 15, 1974, she went to defendant for an examination and told him, among other things, that she had previously consulted another doctor who had diagnosed a condition of mastitis in the left breast, which had "cleared up on its own"; that during the previous two weeks she had discovered a lump in her left breast, which was a firm lump about the size of a small marble, and that during the same period she had noticed that the nipple on her left breast was "pointing outward." She also testified that during that examination defendant was unable to find the lump until she showed him where it was and that he then located it and made arrangements for X-rays.

Plaintiff also testified that on April 4, 1974, she again saw defendant, who told her that he had examined the X-rays and "felt that [she] had mastitis," but to "watch and check it carefully" and that *if* there was any enlargement or seepage, to come back to see him in July.

According to plaintiff's testimony, the lump then "stayed about the same" with no "seepage," until October, when she noticed that the lump was larger and that the nipple was "more inverted" and that she "called the clinic" the next day.

A tissue specimen was then taken and examined and as a result, a radical mastectomy was immediately performed. By then metastesis of the lymph nodes had set in.

*Defendant's testimony.*

Defendant testified, among other things, to the effect that on March 15, 1974, plaintiff told him that she had found a lump in her breast "two weeks ago," but that upon examination he "could not find it." He also testified that he found a "slight lateral inversion of the nipple," but that plaintiff did not tell him that was "a change from the past" and that his "impression" was one of mastitis, but that he arranged for X-rays to be taken.

Defendant also testified that on April 4, 1974, after examining the X-rays, which showed "no localized lesions" he scheduled a "repeat breast check"; told plaintiff to "come back" then and did not tell her that she need not come back if there was no change. Defendant also offered evidence that an appointment was made with plaintiff in July, but that she did not return for that appointment.

Finally, on these points, defendant testified that if he had found a lump "he would biopsy" and that a "deviation" of the nipple is "suspicious * * * if it is a change" and that although he did not diagnose the cancer "in March or April" it was probably there "at that time," although of "nondetectible size," according to defendant.

*Testimony of defendant's expert witness.*

(a) *Direct examination.*

Defendant called as an expert witness Dr. William

H. Massey, who testified, among other things, that he had heard all of defendant's testimony and had also read his deposition and the "clinical notes" of his examinations of plaintiff on March 15 and April 4, 1974.

Defendant's attorney was permitted to ask Dr. Massey for his opinion as an expert witness based upon his hearing defendant's testimony and reading his deposition. Dr. Massey then expressed the opinion that defendant "did an excellent job of examining plaintiff"; that defendant's examination and procedure were "essentially identical to his own." Dr. Massey also testified, based upon defendant's testimony and clinical notes that on April 4, 1974, he also would have asked plaintiff to "come back" in six weeks or three months, presumably instead of immediately ordering a biopsy.

(b) *Cross-examination: hypothetical question.*

Plaintiff's cross-examination of Dr. Massey included a hypothetical question which asked him to assume as true not only facts shown by entries in defendant's clinical notes, but also some of the facts testified to by the plaintiff, including the fact that she told defendant on March 15, 1974, that a lump had appeared in her left breast within the past two weeks and that her left nipple had "inverted" at the same time. Dr. Massey was then asked whether, if those facts were true, a surgeon specializing in breast and cancer care treatment and diagnosis "would have biopsied this patient."

Defendant objected to that hypothetical question on the ground that "[i]t doesn't include *all* of the facts in evidence, which includes *everything* that Dr. Vanderheiden testified that he found." (Emphasis added) That objection was sustained and that ruling is assigned as error.

*It was error to sustain defendant's objection to the use*

*of a hypothetical question on cross-examination of defendant's expert witness.*

Defendant's objection to the hypothetical question on the ground that it did not include "all the facts in evidence" was clearly improper. Oregon follows the more prevalent view that a hypothetical question need not include "all of the facts in evidence," but may be based upon any fair combination of facts supported by the evidence. *James v. Falk,* 226 Or 535, 540, 360 P2d 546 (1961); McCormick on Evidence 34, § 14 (2d ed 1972). If such a question is unfair or confusing, objection may be made to it on that ground and, in that event, the hypothetical question may be "reframed to supply an adequate basis for a helpful answer." McCormick, *supra.*

On this appeal defendant contends that the hypothetical question was improper because "it is extremely long and confusing, and actually includes conflicting evidence." Had that objection been made and sustained at the time of trial, plaintiff might well have "reframed" the question. That objection was not made at the time of trial. Thus, it was waived and cannot be raised by defendant for the first time on appeal because, if raised on trial, any such defect could have been corrected. *Cf. Dickinson v. Leer,* 255 Or 274, 278, 465 P2d 885 (1970). In any event, when this hypothetical question is considered in the light of the entire record, we believe that it was reasonably clear and was not improper. Indeed, defendant's objection at the time of trial was the antithesis of his present objection because if the hypothetical question had included "all the facts in evidence" it would have been even "longer and more confusing" and would have clearly included "conflicting evidence." *Cf. James v. Falk, supra* at 540.

Defendant then contends on this appeal that the "evils of the hypothetical question" should be avoided by use of the "procedure" followed by defendant on the direct examination of its expert witness, in which defendant did not ask him for an opinion based upon a

hypothetical question, but an opinion based upon his review of defendant's medical records, his deposition and hearing his testimony at trial, citing our decision in *Wulff v. Sprouse-Reitz Co., Inc.,* 262 Or 293, 498 P2d 766 (1972), among other authorities. Defendant then contends that the permissible scope of the hypothetical question on cross-examination is no broader than on direct examination, citing *Peterson v. Schlottman,* 237 Or 484, 487, 392 P2d 262 (1964), with the implication that hypothetical questions are also "evil" when used on cross-examination and that when, as in this case, no hypothetical question was asked by defendant of his own expert witness, the cross-examiner of that witness should also be limited to questions asking for opinions based upon defendant's testimony and records, in accordance with the same "procedure" followed by defendant upon the direct examination of his own expert witness.

■■ These contentions by defendant misconceive the rule adopted by this court in *Wulff v. Sprouse-Reitz Co., Inc., supra.* In *Wulff* we held (at 308) in accordance with the rule as stated in Rule 58 of the Uniform Act on Expert Testimony and as also stated in 2 Wigmore on Evidence 813, § 686 (3d ed 1940), that questions calling for the opinion of an expert witness need not be hypothetical in form even where he has not had personal observation of matters of fact in the case, but has listened to or read any or all of the testimony or depositions to such matters of fact and that in such an event he may be asked to state his opinion without specifying in the question the data forming the basis for his conclusion.

We made it clear in *Wulff,* however (at 309), that
"\* \* \* The above rule does not do away with the use of the hypothetical question, but it does eliminate the necessity of following the practice."
and that:
"\* \* \* Great latitude should be given counsel on the cross-examination of an expert witness \* \* \*."

■ The reasons why "great latitude" should be given on the cross-examination of an expert witness whose opinion has been elicited on direct examination by question which does not specify "the data forming the basis" for that opinion are perhaps best stated in Comment, *Opinion Testimony of Expert Witnesses: Oregon's New Rule,* 52 Or L Rev 443 (1973), discussing in depth the rule adopted by this court in *Wulff* and stating (at 454), among other things:

> "* * * The premise of the new rule is that defective or prejudicial examination of an expert witness can be corrected on cross-examination. * * *
>
> "By shifting to the cross-examiner the responsibility of ensuring jury understanding of the foundation of the expert opinion, the new rule assumes that he will perform his task vigorously and completely. But the task of exposing the weakness of an expert's opinion is a formidable one. * * *"

and also (at 452):

> "The means available to opposing counsel to discredit an expert opinion based on a one-sided interpretation of evidence are rather limited. *He must demonstrate to the jury on cross-examination that a change in the facts which the expert assumes to be true necessitates a modification of the opinion,* and then later in closing argument he must suggest that the jury should not give the opinion great weight. * * *" (Emphasis added)

and (at 448):

> "The new rule creates the possibility that examining counsel or the expert will not set forth clearly for the jury assumptions which the expert makes in forming his opinion. To compensate for this possibility, the new rule shifts to the cross-examiner the burden of challenging the foundation for the expert testimony. The justification for the shift is that, because the cross-examiner has an equal chance to draw out the facts on which the opinion is based, it makes little difference whether the examining or cross-examining attorney does the questioning. *If he considers the opinion to be ill-founded or patently partisan, the cross-examiner can test its validity by requiring the expert to answer the same question based*

*on an interpretation of the evidence favorable to the cross-examiner's case. * * *"* (Emphasis added)

In this case the testimony of defendant upon which his expert witness relied in expressing his opinion favorable to the defendant included the important testimony that upon his examination of plaintiff on March 15, 1974, defendant did not find any "lump" on plaintiff's breast; that if he had found a lump he "would biopsy" (which would have disclosed the cancer); and that although he found a "slight lateral inversion of the nipple" she did not tell him that this "slight inversion was a change from the past" which would have made that fact a "suspicious factor if it is a change." The question asked by defendant on direct examination of his own expert witness did not "specify the data" forming the basis for the opinion of defendant's expert witness, in accordance with the rule of *Wulff.*

■ Plaintiff was then faced with the "formidable" task of "exposing the weakness" of the opinion expressed by defendant's expert witness by demonstrating that "a change in the facts which the expert assume[d] to be true necessitate[d] a modification of [his] opinion." Comment, *supra* at 452. In undertaking that task, it was obviously of importance to find out whether his opinion would not be different if it were true, as testified by plaintiff, that "she went to the doctor; advised that the lump appeared within two weeks and that the nipple had inverted at the same time." As previously noted, plaintiff had testified that when she was examined by defendant on March 15, 1974, she had a lump in her left breast the size of a small marble and that after she showed him where it was, he then "located it" and that she also told him that it was only during the previous two weeks that she had noticed both the "lump" and the "change" in the "nipple pointing outward."

We hold that under these facts this was a proper hypothetical question on cross-examination. By sus-

taining defendant's improper objection to that question plaintiff was improperly limited in the discharge of the "formidable" task imposed upon the cross-examiner by the rule of *Wulff* to expose, if he could, the weakness of the testimony given by an expert witness in response to a question on direct examination which did not "specify the data" upon which the witness was to base his opinion as an expert by showing that "a change in the facts" assumed by the expert to be true would necessitate a change in that opinion.

■ Finally, defendant contends that plaintiff was not prejudiced because she "has failed to specify how she was prejudiced by the trial court's ruling." We know of no such requirement. Ordinarily, error in the admission or exclusion of evidence is deemed to be prejudicial unless the contrary is affirmatively shown. *See Meyer v. Harvey Aluminum,* 263 Or 487, 495, 501 P2d 795 (1972), and *Kirkendall v. Korseberg,* 247 Or 75, 77-78, 427 P2d 418 (1967).

Also, as stated in the leading case of *Alford v. United States,* 282 US 687, 692 (1931):

> "Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. [Citations omitted] It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. * * * To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial. [Citations omitted]"

■■ In our opinion, the danger, if not the probability that plaintiff was prejudiced by this improper limitation upon her right to cross-examine defendant's

expert witness was so great under the facts of this case that we must remand it for a new trial.[1]

Reversed and remanded.

---

[1]Plaintiff has assigned numerous other errors on this appeal. Because of the basis for this opinion we need not consider those questions, which may not arise again upon the retrial of this case. We think it appropriate to add, however, that plaintiff is entitled to instructions which fairly state her theory of the case.