Argued and submitted February 11; resubmitted In Banc July 1,
reversed and remanded with instructions October 20,
reconsideration denied December 10, 1982,
petition for review allowed January 11, 1983 (294 Or 391)

VAN GORDON,
*Respondent,*
*v.*
PORTLAND GENERAL ELECTRIC COMPANY,
*Appellant.*

PORTLAND GENERAL ELECTRIC COMPANY,
*Appellant,*
*v.*
BARKER et al,
*Respondents.*

(No. A7902-00508, CA 19901)
652 P2d 817

John R. Faust, Jr., Portland, argued the cause for appellant. With him on the briefs were Schwabe, Williamson, Wyatt, Moore & Roberts, James K. Buell, and Buell, Black, Gates & Dupuy, Portland.

Janet C. Neuman, Portland, argued the cause for respondent Brock A. Van Gordon. With her on the brief was Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Margaret H. Leek Leiberan, Portland, argued the cause for respondents Kino Barker and Helene Barker. With her on the brief was Lang & Smith, Portland.

THORNTON, J.

Van Hoomissen, J., concurring in part; dissenting in part.

Richardson, J., dissenting.

## THORNTON, J.

Defendant Portland General Electric Company (PGE) appeals from a judgment entered after a jury verdict awarding plaintiff damages for injuries sustained by plaintiff at Austin Hot Springs. The issues are whether the trial court erred (1) in denying PGE's motions to dismiss and for a directed verdict, (2) in instructing the jury and (3) in ruling on the evidence.

Austin Hot Springs is located in a forested area on the upper Clackamas River. PGE allows public recreational use of the area and provides picnic facilities, entrance roads and parking facilities. The characteristic which accounts for the name and, presumably, the attractiveness of the area to bathers is that cool river water mixes with percolating hot water from underground springs. The effect is that pools are formed, either naturally or through the movement of rocks by bathers. The pools vary from moderate temperatures to 190 degrees Fahrenheit. Although steam is sometimes visible in the vicinity of the hotter pools, the pools are interspersed in a way that makes it generally impossible for bathers to know in advance what the precise heat level will be in a particular pool.

On May 20, 1978, plaintiff, then age 2, entered the hot springs area by car with his grandparents, the Barkers, and his four-year-old brother. They did not enter the area through the main entrance, and there was no sign at the entrance they did use to inform them that they were at Austin Hot Springs. They had not been in the area before. After using the picnic facilities, Mrs. Barker and the children went for a walk. On reaching a point on the river where they saw people bathing and wading, they decided to wade in a shallow pool near the bank. Thereafter, plaintiff moved from the water onto a rock and slipped and fell into an adjacent pool. He began to scream. Mrs. Barker was approximately 10 to 12 feet away; by the time she reached plaintiff, his legs were scalded. At the time plaintiff was injured, there were three signs in the hot springs area which read "HOT WATER." However, the words on the signs were not visible from the route Mrs. Barker and the children followed to the river, and she did not see the signs before plaintiff was injured.

Austin Hot Springs is subject to ORS 105.655 *et seq.*, relating to "Public Recreational Use of Private Lands." ORS 105.660 provides:

"The Legislative Assembly hereby declares it is the public policy of the State of Oregon to encourage owners of land to make their land available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes and, in the case of permissive use, by protecting their interests in their land from the extinguishment of any such interest or the acquisition by the public of any right to use or continue the use of such land for recreational purposes."

ORS 105.665 provides:

"Except as otherwise provided in ORS 105.675:

"(1)   An owner of land owes no duty of care to keep the land safe for entry or use by others for any recreational purpose or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering thereon for any such purpose.

"(2)   An owner of land who either directly or indirectly invites or permits any person to use his land for any recreational purpose without charge does not thereby:

"(a)   Extend any assurance that the land is safe for any purpose;

"(b)   Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or

"(c)   Assume responsibility for or incur liability for any injury, death or loss to any person or property caused by an act or omission of that person."

ORS 105.675 provides, as relevant:

"Nothing in ORS 105.655 to 105.680 limits in any way any liability of an owner of land which may otherwise exist:

"(1)   For his reckless failure to guard or warn against a dangerous condition, use, structure or activity on the land
* * *

"* * * * *."

In *Hogg v. Clatsop County,* 46 Or App 129, 610 P2d 1248 (1980), we said:

"ORS 105.665 clearly relieves defendant of any liability for mere negligent behavior. However, ORS 105.675(1) * * *

provides for the retention of liability of landowners for reckless behavior. * * *" 46 Or App at 132.

PGE first assigns as error the trial court's denial of its motion to dismiss or its motion for a directed verdict, because there was no evidence of recklessness. In *Hogg,* we adopted the test for the proof of recklessness under ORS 105.675 (quoting from *Falls v. Mortensen,* 207 Or 130, 295 P2d 182 (1956), *overruled in part, Lindner v. Ahlgren,* 257 Or 127, 134, 477 P2d 219 (1970)):

" ' "* * * A defendant's act is properly characterized as wilful, wanton or reckless * * * only when it was apparent, or reasonably should have been apparent, to the defendant that the result was likely to prove disastrous to the plaintiff, and he acted with such an indifference toward, or utter disregard of, such a consequence that it can be said he was willing to perpetrate it. The elements necessary to characterize an injury as wantonly or wilfully inflicted are (1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another. * * *" ' 207 Or at 138." 46 Or App at 132-33.

Both parties contend that they are entitled to prevail under this test; neither questions the correctness or completeness of the test.

The first issue presented is whether there was evidence to support a finding of recklessness in defendant's activities and thereby deprive defendant of the immunity provided.

Viewed most favorably to plaintiff, the evidence established several facts. Before plaintiff was injured, PGE had been apprised that severe burns had been sustained by persons who entered pools in the hot springs area without being forewarned of their extreme and unpredictable temperatures and that PGE employes were aware of previous burning incidents and of the dangerous characteristics of the water. At the time of plaintiff's injury, the three "HOT WATER" signs were visible from the main access routes to the water, but no warning was visible to persons who

approached by the less commonly used but nevertheless accessible route followed by plaintiff's party. That route was not closed to visitors, and a water faucet and firepit for public use were located along it. In addition to the route used by plaintiff, there were other places in the hot springs area from which the water could be reached but from which the warnings could not be seen. The signs in the main hot springs area contained no cautionary language other than the words "HOT WATER." No employes were in attendance who were responsible for guarding or warning users of the springs. There were no warning, safety or precautionary measures or devices in the area except the three signs.

Although more signs or signs located differently or a full-time attendant might have made the area safer, defendant's failure to provide such measures does not as a matter of law rise to the level of "recklessness" that the legislature intended in ORS 105.675(1). We hold that the immunity provided in ORS 105.655 *et seq* applies to defendant's conduct and that the motion should have been granted. The result argued for by the dissenting judges frustrates the declared policy of the State of Oregon to encourage private owners of recreational areas to make them available for use and enjoyment by the public. *See Loney v. McPhillips,* 268 Or 378, 387, 521 P2d 340 (1974).

We conclude that the trial court should have granted defendant's motion to dismiss or granted its motion for directed verdict. Defendant's Austin Hot Springs facility is open to the public without charge, and defendant's liability for injuries to users is controlled by ORS 105.655 *et seq.* The purpose of providing limited liability to owners of recreational land declared in ORS 105.660 is to encourage owners "to make their land available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *See also* ORS 390.010. To further that goal, the legislature enacted ORS 105.665(1), which relieves owners of recreational land of any duty of care to keep their land safe for entry or use by others. It also provides that there is no duty to give any warning of a dangerous condition, use, structure or activity on the land to persons entering for recreational purposes. Under subsection (2), a recreational land owner does not

extend any assurance that the land is safe for any purpose and does not assume responsibility for any injury to any person.

Reversed and remanded with instructions to enter a judgment for defendant.

**VAN HOOMISSEN, J.,** concurring in part; dissenting in part.

The majority holds that the trial court should have granted defendant's motion to dismiss or for a directed verdict. I disagree and concur with the conclusion of Judge Richardson that (1) plaintiff's proof of recklessness was sufficient to go to the jury and to support the verdict and (2) ORS 105.655 *et seq* does not immunize defendant from liability. However, because I conclude that the trial court erroneously admitted evidence that after the accident defendant had replaced its warning signs, I would reverse and remand for a new trial.

There was evidence from which the jury could have found the three elements or recklessness enumerated in *Hogg v. Clatsop County,* 46 Or App 129, 610 P2d 1248 (1980). Viewed most favorably to plaintiff, the evidence established: Before plaintiff was injured, PGE had been apprised that severe burns had been sustained by persons who entered pools in the hot springs area without being forewarned of their extreme and unpredictable temperatures; PGE employes were aware of previous burning incidents and were aware of the dangerous characteristics of the water. At the time of plaintiff's injury, the three "HOT WATER" signs were visible from the main access routes to the water, but the warning was not visible to persons who approached from the less commonly used but nevertheless accessible route followed by plaintiff's party. That route was not closed to visitors, and a water faucet and firepit for public use were located along it. In addition to the route used by plaintiff, there were other places in the hot springs area from which the water could be reached but from which the warnings could not be seen. The signs in the main hot springs area contained no cautionary language other than the words "HOT WATER." No employes were in attendance who were responsible for guarding or warning users of the springs. There were no warning, safety or precautionary measures or devices in the area except the three signs. I

conclude that the jury could have reasonably found from the evidence that injuries had been sustained in the past, that a danger of extremely high water temperatures existed at random locations and that serious injuries were likely in the absence of more adequate warnings or precautions.

Most of PGE's specific arguments under its first assignment of error appear to question whether sufficient evidence supported a finding of recklessness rather than ordinary negligence.[1] There was enough evidence for the jury to find each of the elements of recklessness under *Hogg v. Clatsop County, supra,* and it is not our function to make an independent qualitative evaluation about which of two findings is better supported by evidence which is sufficient to support either finding. *Wootten v. Dillard,* 286 Or 129, 136, 592 P2d 1021 (1979).

PGE also argues:

"Recklessness here requires an element of willfulness. * * *

"* * * * *

"The standard here is that defendant must be shown to have recklessly failed to exercise some measure of *ordinary care* with *knowledge* that his failure was *likely* to prove 'disastrous' to another, *Hogg, supra.* The plaintiff must not only show that reasonable means of preventing his injury existed, as plaintiff here attempted to do, he must show that defendant *knew* of such measures and consciously rejected them.

"There was simply no evidence whatsoever suggesting that defendant *knew* that some measure of *ordinary* care had not been taken which made it likely that this plaintiff would suffer this injury." (Footnote omitted; emphasis defendant's.)

---

[1] It is not completely clear that PGE regards all of these arguments as pertaining to the degree of fault the evidence proved, *i.e.,* recklessness or negligence, or whether PGE is also arguing that, in light of ORS 105.655 *et seq.,* it owed plaintiff no duty. To the extent PGE is making the latter argument and positing that liability is foreclosed as a *matter of law,* PGE's position is inconsistent with ORS 105.675 and *Hogg v. Clatsop County, supra.* As a *factual* proposition, the two arguments are indistinguishable for purposes of this case. If the evidence supported no more than a finding of negligence, PGE would be immune from liability under ORS 105.665 and would have breached no duty of care it owed plaintiff. *See* ORS 105.680.

*Williamson v. McKenna,* 223 Or 366, 397-99, 354 P2d 56 (1960), *Falls v. Mortensen, supra,* and numerous other cases are contrary to PGE's suggestion that proof of subjectively willful or knowing conduct was required. We also disagree with PGE's understanding that *Hogg v. Clatsop County, supra,* required proof that PGE knew of particular ways by which to exercise ordinary care and diligence. All that must be shown is that there were ways of exercising such care and diligence which were within PGE's ability and which would have tended to prevent injury. That showing was made here. I reject PGE's first assignment of error.

PGE also assigns as error the trial court's refusal to give two requested instructions. The first was:

> "There are two statutes enacted by the legislature of the State of Oregon encouraging the owners of land to make it available to the public for recreational purposes, which statutes apply to the defendant PGE in this case.

> "[Verbatim portions of ORS 105.660 and 390.010.]

> "I instruct you that the activities which the defendant PGE permitted and made provision for on its property at Austin Hot Springs falls within the stated policy of the State of Oregon as set forth in the statutes which I have just quoted to you."

The second instruction would have communicated the text of ORS 105.665 to the jury, would have informed the jury that Austin Hot Springs was subject to that statute and would have concluded:

> "Accordingly, you could not find PGE liable in this case simply because you might find that it was negligent in some respect in the maintenance of Austin Hot Springs. On the contrary, the defendant PGE could only be held liable if its conduct were willful, wanton or reckless and I will instruct you upon that aspect of the case later in these instructions."

PGE argues that the court's failure to give the instructions had the following effect:

> "* * * [T]he jury was never informed that there was another side to the case - a side that is well supported by statutory law and public policy. The jury was never told that there is a *reason* for limiting liability to recklessness,

and that the reason is not simply the protection of the defendant, but the public benefit in encouraging landowners to allow public use of lands with recreational possibilities.

"Where this public policy is enunciated in the statute controlling the case, it should be given to the jury." (Emphasis defendant's.)

Although ORS 105.660 and 390.010 do enunciate a policy and ORS 105.665 does insulate landowners who promote that policy from liability for negligence, ORS 105.675 expressly leaves such landowners subject to liability for reckless failure to guard or warn. PGE does not argue that the instructions given failed to apprise the jury that PGE could be held liable only for recklessness.[2] It was unnecessary to instruct the jury further that it could not find for plaintiff if it found only negligence, and it would have been both unnecessary and improper to instruct the jury why PGE was immune from liability for simple negligence. ORS 105.655 *et seq.* strive to achieve their effect by limiting liability to conduct which reaches a high level of "culpability"; the statutes do not provide that a jury's determination of liability should be based on an independent weighing of policy considerations, instead of or in addition to its finding that the conduct in question does or does not reach that level. The requested instructions were properly refused.

PGE contends that the trial court erred by refusing to receive a 1949 letter from the United States Forest Service to PGE "suggesting the development of a park facility" in the hot springs area and an in-house letter transmitting the Forest Service communication to PGE's vice-president. PGE argues:

"* * * The purpose of offering the letter was to show (1) that the public used Austin Hot Springs long before it was improved with garbage cans, toilets and other utilities and (2) PGE's motives in developing the park, which were to reduce the fire and sanitation problems inherent there.

"Because allegations of recklessness inherently include an element of defendant's motive in acting or failing to act,

---

[2] PGE makes no assignment of error that the court's instructions defining recklessness were incorrect.

evidence to the contrary is obviously relevant. To deny defendant an opportunity to show motives other than those plaintiff ascribed to defendant is to deny defendant a defense at all on that subject."

As discussed above, subjective motivation is not a necessary element in the proof of recklessness. More fundamentally, PGE's motives for developing the area in the distant past bear no conceivable relationship to PGE's motives or its safety measures in 1978. The letters were, therefore, irrelevant.

PGE assigns as error the admission of evidence of the cost of having a full-time attendant in the area. It contends that that evidence was not material to any issue in the case and that

"* * * [p]laintiff did not and never has established a duty to have a full-time attendant at the water's edge. Introduction of this evidence in effect 'bootstrapped' such a duty in the eyes of the jury, by leaving an impression that an attendant should have been on duty. That had to be prejudicial.

"Second, it is difficult to see the relevance to the case. There was no evidence from which a jury could possibly have concluded that the presence of an attendant would have prevented a two year old child in the company of his grandparent from losing his balance and falling into a pool."

The evidence was probative of whether ways existed by which PGE could have exercised ordinary care to avoid injury. Although it is unlikely that an attendant could have prevented plaintiff's injury once he had reached the place from which he fell, that is not the issue. The issue is whether PGE exercised the requisite care to guard or warn against the danger of contact with hot water. It is not unlikely—or at least a jury could so find—that cautioning by an attendant would have prevented plaintiff from reaching the place where he was exposed to that danger or from playing in the water and on the rocks without closer supervision by his grandmother. The admission of the evidence was not error.

PGE next contends that the trial court erroneously admitted evidence that, in September, 1978, the three signs

that had read "HOT WATER" at the time of the accident were replaced by signs which read:

> "CAUTION
> "HOT WATER
> "SOME WATER & ROCK TEMPERATURES
> IN THIS AREA ARE HIGH ENOUGH TO
> CAUSE BURNS
>
> "ACTIVITIES OF CHILDREN & PETS
> SHOULD BE MONITORED CLOSELY."

PGE argues that that evidence was inadmissible. In *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 421 P2d 370 (1966), the Supreme Court said:

> "* * * It is the rule in this state, and in most other jurisdictions that common law negligence may not be proved by the introduction of evidence that subsequent to the accident in question defendant made improvements or repairs to the instrumentality that caused the injury. * * *" (Footnotes omitted.) 245 Or at 199.

The rationale for the exclusion of "subsequent repair" evidence is:

> "Some of the courts exclude the evidence on the theory that it is immaterial and irrelevant, while others take the position that such evidence should be excluded as a matter of policy, since such subsequent repairs, alterations, or precautions are to be encouraged in order to prevent future accidents, and if such improvements could be introduced in evidence against the person making them as proof of his prior negligence, he would be discouraged from improving the place or thing that caused the injury." 64 ALR2d at 1303.

An explanation in McCormick, Evidence 666, § 275 (2d ed E. Cleary 1972), is less ambivalent:

> "* * * The predominant reason for excluding such evidence, however, is not lack of probative significance but a policy against discouraging the taking of safety measures. * * *" (Footnote omitted.)

Plaintiff argues that the exclusionary rule pertains only to subsequent repair evidence introduced to prove antecedent negligence and that the evidence here was not adduced for that purpose, but rather to show that a particular safety measure was feasible. Plaintiff states:

"* * * The purpose of admitting post-accident remedial measures in this case was to demonstrate that at least one of the measures of due care available to defendant for preventing this type of accident was to strengthen the words on its warning signs. The fact that PGE did just that only a few months after [plaintiff's] accident illustrates that PGE had the ability to take this ordinary precaution to avoid the danger of serious burns at Austin Hot Springs. Plaintiff is not arguing that changing the wording on only three poorly placed signs would necessarily be sufficient to relieve PGE of *any* liability, but this evidence does tend to prove that there were ordinary means available to PGE to warn visitors of the dangers of the hot water. At least, the jury could have so found." (Emphasis plaintiff's.)

Plaintiff also argues that the exclusionary rule should not apply to proof of recklessness, because subsequent repair "evidence is generally admissible when the theory of liability is something other than negligence."

Plaintiff relies on *Fields v. Fields,* 213 Or 522, 307 P2d 528, 326 P2d 451 (1958), *overruled on other grounds, Conachan v. Williams,* 266 Or 45, 54 n 2, 511 P2d 392 (1973), to support his contention that evidence of the changes in the signs was properly admitted to prove the feasibility of the measure rather than PGE's earlier failure to exercise appropriate care. In *Fields,* plaintiff son sued defendant father for injuries son suffered while in father's employ from a bolt projecting from farm equipment. Plaintiff introduced evidence that, after his injury, protective devices were placed over the projecting part. The Supreme Court stated:

"* * * The evidence established that after the accident the father guarded the bolt with a heavy covering of tape and that later, after he had purchased the machine from his father, Leonard installed a metal guard over the universal joint. Neither of these protective measures impaired the efficiency of the machine. This evidence was admissible to show the practicality of guarding the shaft and universal joint without impairing the efficiency of the machine. * * *" 213 Or at 538.

It is less than clear whether the feasibility exception to the exclusionary rule was adopted in *Fields.*[3]

---

[3] *Cameron v. Pacific Lime & Gypsum Co.,* 73 Or 510, 517, 144 P 446, AC 16E 769 (1914), which plaintiff also cites for the proposition that the feasibility

McCormick indicates that the exception has been more explicitly adopted in other jurisdictions. He notes, however:

> "Determining when feasibility is properly an issue has proved troublesome. If defendant claims the precaution was not feasible, the evidence is clearly admissible. * * * Some cases limit admissibility to this situation. * * * However, the nature of the accident as proven by plaintiff may raise a doubt whether preventive measures were practicable. * * * Or plaintiff may rely on a statute which is construed to make proof of feasibility a part of plaintiff's case. Rich v. Tite-Knot Pine Mill, 245 Ore. 185, 421 P.2d 370 (1966). But even in these latter cases, the plaintiff might well be limited to other types of evidence, such as opinion or customary practices of such businesses, where these are available and sufficient. See Miniea v. St. Louis Cooperage Co., 175 Mo.App. 91, 157 S.W. 1006, 1012 (1913); Blais v. Flanders Hardware Co., 93 N.H. 370, 42 A.2d 332, 335 (1945) ('descriptive testimony could readily be given'). Unrestricted use of feasibility evidence would obviously eliminate the exclusionary rule in its entirety." McCormick, *supra,* at 667-68 n 21.

McCormick's observation that unrestricted use of the exception would devour the rule is an understatement. A jury would have to be subtle indeed to detect any difference between the fact that a repair was feasible because it was made after an accident and the fact that defendant's failure to make that feasible repair before the accident was negligent.

The feasibility exception does not assist plaintiff. Feasibility was not an issue here. This case differs from

---

exception has been judicially adopted in Oregon, supports the proposition somewhat more clearly, although not completely so. I note, however, that in *Phipps v. Air King Manufacturing,* 263 Or 141, 501 P2d 790 (1972), decided after both *Cameron* and *Fields,* the Supreme Court stated:

> "* * * [E]xcept in cases brought under the Employers' Liability Act, common law negligence cannot be established by evidence of subsequent improvements or repairs to the object that caused the injury. * * *" 263 Or at 143. (Emphasis added.)

OEC 407 adopts both the subsequent repair exclusionary rule and the feasibility exception to the rule. Like the common law, OEC 407 would limit the feasibility exception to cases where the feasibility of the corrective measure is controverted. (OEC 407 became effective on January 1, 1982, and does not apply to this case.)

*Fields,* in which the evidence was admitted to show that a machine would remain functional if corrected to guard the part which caused plaintiff's injury. Here, PGE denied that ordinary care required that it change the wording on the signs, but no real question arose about whether the signs could be changed. It is evident that a person who posts a sign saying one thing can as readily post a different sign saying something else. Moreover, plaintiff did not need the evidence of the replacement to show that a differently worded sign was both feasible and a means of exercising ordinary care. He could, and did, adduce testimony that in May, 1978, the signs in the area did not contain warnings such as "caution" and "some temperatures are high enough to cause burns." It was unnecessary to produce evidence that new signs were posted later which did contain such language to prove the point. I reject plaintiff's feasibility exception argument.

Plaintiff cites 29 Am Jur 2d, *Evidence,* § 275 (1967), as authority for his argument that the exclusionary rule does not apply "when the theory of liability is something other than negligence."[4] The annotations to that section indicate that many courts have held the rule inapplicable in products liability cases. *See Phipps v. Air King Manufacturing,* 263 Or 141, 143 n 1, 501 P2d 790 (1972). A rationale for not extending the rule to the product liability area was explained in *Ault v. International Harvester Co.,* 13 Cal 3d 113, 117 Cal Rptr 812, 528 P2d 1148 (1974), in which the California Supreme Court stated:

> "When the context is transformed from a typical negligence setting to the modern products liability field, however, the 'public policy' assumptions justifying this evidentiary rule are no longer valid. * * * [I]t is manifestly unrealistic to suggest that [a mass] producer will forego making improvements in its product, and risk innumerble additional lawsuits and the attendant adverse effect upon its public image, simply because evidence of adoption of such improvement may be admitted in an action founded on strict liability for recovery on an injury that preceded the improvement. * * *

---

[4] OEC 407 makes the rule applicable to the proof of "culpable conduct" as well as to negligence.

"This view has been advanced by others. It has been pointed out that not only is the policy of encouraging repairs and improvements of doubtful validity in an action for strict liability since it is in the economic self interest of a manufacturer to improve and repair defective products, but that the application of the rule would be contrary to the public policy of encouraging the distributor of mass-produced goods to market safer products. * * *" 13 Cal 3d at 120.

Whatever logic may reside in the *Ault* rationale for not applying the exclusionary rule in product liability cases, that rationale is not relevant to whether the rule should apply in a recklessness case. The putative economics of scale incentive for making repairs to widely marketed products is as much of a distinguishing factor between product liability and recklessness actions as it is between product liability and negligence actions. Although the degree of "culpability" between recklessness and negligence differs, there is no inherently greater likelihood of repetitive injuries in one context than in the other, and the "implied admission" of fault from the making of a repair is equally present in both.

Plaintiff suggests no policy basis for not applying the exclusionary rule in recklessness as well as negligence cases. Some policy bases occur to us, all of which derive from the proposition that continuing recklessness should be deterred more by the stick than by the carrot, while positive reinforcements like the exclusionary rule are more palatable as a means to deter continuing negligence. These policy factors tend to dissipate, however, when it is borne in mind that a knowing failure to correct a negligently caused condition which already has resulted in one injury can be a reckless act in itself. The same basic considerations apply to the remedial measure whether the initial injury was caused by negligent or reckless conduct.

I conclude that the rule excluding subsequent repair evidence applies in recklessness cases. It follows that the trial court erred by admitting the evidence of the change in the wording of the signs. The remaining question is whether that error was prejudicial.

Ordinarily, error in the admission of evidence is deemed prejudicial unless the contrary is affirmatively

shown. *Elam v. Soares,* 282 Or 93, 103, 577 P2d 1336
(1978); *Samuel v. Vanderheiden,* 277 Or 239, 248, 560 P2d
636 (1977); *Meyer v. Harvey Aluminum,* 263 Or 487, 495,
501 P2d 795 (1972). Here, the evidence erroneously admit-
ted goes to the heart of plaintiff's claim. The complaint
alleged, in part, recklessness in the failure to warn of the
dangers of serious injury that attended use of the pools.
Plaintiff stressed throughout his brief the failure of PGE to
advise users of the dangers of the hot pools.

The change in wording of the warning signs "coin-
cidentally" depicts the facts of this case. Essentially, the
new warning directs users to closely monitor activities of
children to avoid accidents resulting from the hot water
causing burns. Once this type of evidence is introduced, the
factfinder could draw the inference that the change was
made to cure antecedent negligence, whatever PGE's actual
reasons for making the change.[5]

It may be true that the jury could find that it was
feasible for PGE to more specifically warn of possible
dangers without the inadmissible evidence of the new warn-
ings. However, it does not follow that the new signs'
injunction to monitor children closely because of possible
burns did not contribute to a finding by the jury that the
exercise of ordinary care and diligence required that the
signs say more than they did at the time of the injury.
Likewise, although the location of the signs was an impor-
tant issue in the case, the contention that the significance
of the change in wording was "marginal at most" is unsup-
ported by the evidence or by commonsense. The jury might

---

[5] In examining one of PGE's employes, PGE's attorney elicited an explanation
that the signs were changed because:

"* * * I recall going into the area and just walking around. It was my
feeling that the signs that were in place were, in my own opinion, not very
aesthetically pleasing. They were white signs with stenciled red letters indicat-
ing 'Hot water.' My background is in recreation. I'm a professional, and I hope
I do things in a professional manner. I didn't think the signs were very
professional. * * *"

The evidence in the case did not show that PGE was aware of plaintiff's injury
before the signs were changed. The exclusionary rule applies nevertheless. PGE's
motive for making a repair does not alter its status as a subsequent repair for
purposes of the rule. Once the evidence of a repair has been introduced by plaintiff,
the factfinder could draw the inference that the repair was made to cure an
antecedent lack of care, whatever PGE's actual reasons for making the repair.
Moreover, once the evidence has been introduced, any explanation PGE offers for
the repair would serve only to rebut that inference.

easily have found that PGE considered its prior preventive measure inadequate and that the wording change constituted an admission by PGE of its own reckless conduct. I conclude that the presumption of prejudice has not been "affirmatively" rebutted.

Gillette and Young, JJ., join in this opinion.

**RICHARDSON, J.,** dissenting.

It is not clear whether the principal basis for the majority's holding is that plaintiff failed to produce enough evidence of recklessness to create a jury question or, alternatively, that ORS 105.655 *et seq.* immunize defendant from liability even if the jury's finding of recklessness was supported by substantial evidence. I disagree with both of those possible bases for the majority's conclusion and I respectfully dissent.

1. *Sufficiency of the evidence of recklessness*

The majority accurately summarizes the facts favorable to plaintiff which the evidence supported. 59 Or App at 744-45. The majority also quotes, with apparent approval, the three-part test we adopted in *Hogg v. Clatsop County,* 46 Or App 129, 610 P2d 1248 (1980), for determining whether conduct can be characterized as reckless in cases where ORS 105.655 *et seq.* apply.[1] 59 Or App at 744. Curiously, however, the majority does not go on to apply the *Hogg* test to the proven facts here. In my view, plaintiff's evidence was sufficient under that test. The jury could have found or inferred:

(a) Defendant had "knowledge of a situation requiring the exercise of ordinary skill and diligence to avert injury to another." Defendant's employes were aware of the unpredictable and sporadically dangerous temperatures of the water, and they knew that serious burns had been suffered by users of the springs in the past.

---

[1] The issue in *Hogg* was whether the plaintiff's allegations of recklessness were adequate to survive a demurrer. However, the facts which must be alleged to state a claim must also be proved to recover on that claim, and the three *Hogg* factors are therefore as applicable in testing the sufficiency of proof as the sufficiency of a complaint.

(b)  Without doubt, there were many precautionary or warning measures defendant *could* have taken and did not. However, it is *sufficient,* for purposes of determining whether defendant had the "ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand," to note that defendant did post the three "HOT WATER" signs at certain approaches to the springs, but no warning sign was visible from the route taken by plaintiff, his grandmother and brother. It is obvious that defendant had the ability to post additional signs that were visible from approaches, like the one used by plaintiff, which defendant could reasonably have foreseen visitors might use. It is equally obvious that not all visitors would use the approaches to the springs on which defendant elected to place warning signs.

(c)  It is inferable from the foregoing that defendant did not "use such care and diligence to avert the threatened danger, when to the ordinary mind it must [have been] apparent that the result [was] likely to prove disastrous to another." That is to say, the jury could have found that serious injuries had occurred in the past, that there was an ongoing danger of extremely high water temperatures at random locations and that disastrous injuries were likely in the absence of adequate warnings or precautions.

For those reasons, I think it is clear that plaintiff's proof of recklessness was sufficient to go to the jury and to support the verdict.[2] As indicated at the beginning of this opinion, it is not certain that the majority disagrees. It states:

> "* * * [D]efendant's failure to provide such measures does not as a matter of law rise to the level of 'recklessness' *that the legislature intended in ORS 105.675(1). We hold that the immunity provided in ORS 105.655 et seq. applies* to defendant's conduct and that the motion should have been granted. * * *" (Emphasis added) 59 Or App at 745.

---

[2] I note that, although defendant does argue that the issue or recklessness should have been taken from the jury, defendant does not contend that the court's instructions on recklessness were incorrect. It follows, of course, that a properly instructed jury found from the evidence that defendant's conduct was reckless.

I understand that statement to mean that ORS 105.655 *et seq.* immunize defendant from liability whether or not its conduct was proven to be reckless. I turn to that issue.

2. *Effect of ORS 105.655 et seq.*

As the majority notes, *see* 59 Or App at 743-44, we concluded in *Hogg v. Clatsop County, supra,* that

"ORS 105.665 clearly relieves defendant of any liability for mere negligent behavior. However, ORS 105.675(1) * * *

"* * * * *

"* * * provides for the retention of liability of landowners for reckless behavior. * * *" 46 Or App at 132.

That conclusion is dictated by the language of ORS 105.675(1) that nothing in the relevant statutes limits liability "which may otherwise exist" for a "reckless failure to guard or warn against a dangerous condition, use, structure or activity on the land." The majority's statement that defendant's conduct "does not as a matter of law rise to the *level of 'recklessness'* that the legislature intended in ORS 105.675(1)" (emphasis added) disregards the language of that statute and our interpretation of it in *Hogg.* ORS 105.675(1) does not differentiate between *levels* of recklessness. ORS 105.655 *et seq.* relieve landowners from liability for ordinary negligence, but ORS 105.675(1) expressly leaves owners subject to *"any* liability * * * which may otherwise exist" for reckless failures to guard or warn against dangerous conditions on the land. (Emphasis added.)

The majority also states:

"* * * [T]he legislature enacted ORS 105.665(1), which relieves owners of recreational land of any duty of care to keep their land safe for entry or use by others. It also provides that there is no duty to give any warning of a dangerous condition, use, structure or activity on the land to persons entering for recreational purposes. Under subsection (2), a recreational land owner does not extend any assurance that the land is safe for any purpose and does not assume responsibility for any injury to any person." 59 Or App at 745-46.

As interpreted by the majority, ORS 105.665 is inconsistent with ORS 105.675(1). However, the majority apparently overlooks the introductory language of ORS 105.665, which states that the provisions of that section apply "[e]xcept as otherwise provided in ORS 105.675." Correspondingly, the introductory clause of ORS 105.675 states that "[n]othing in ORS 105.655 to 105.680 limits in any way any liability * * *" for the conduct or under the circumstances described in the section—including liability for reckless failures to guard or warn.

In sum, ORS 105.675 is clear in its meaning and is consistent with the other provisions of ORS 105.655 *et seq.* Those statutes encourage owners to make recreational land available to the public, and they provide that the owners cannot be held liable for ordinary negligence. However, ORS l05.675(1) very expressly provides that owners are not relieved from liability for reckless conduct of the kind alleged and proved here. The majority appears to believe that the statutory policy cannot be adequately served without immunizing landowners from liability for the conduct to which ORS 105.675(1) leaves them subject. The majority may be correct in that belief. However, the majority is not the legislature.

Because the majority holds that defendant was entitled to a directed verdict, it is unnecessary to discuss the assignments of error through which defendant makes its alternative assertion that the case should be remanded for a new trial. I nevertheless note that, having considered those remaining assignments, I would affirm the judgment.

The separate opinion of Van Hoomissen, J., concludes that the court erred in admitting evidence that defendant installed signs with different wording after plaintiff sustained his injury and would reverse and remand for a new trial. I agree that the court erred in that respect, but conclude that under all the circumstances the error was harmless and does not require reversal. I would affirm the judgment and therefore dissent.